**In re SHEPPARD'S DENTAL CENTERS, INC., Debtor.**

**SHEPPARD'S DENTAL CENTERS, INC., Plaintiff,**

v.

**SOUTHWEST SDC, INC.; Family Health Care Systems, Inc.; DC Dentalcare Corporation; Robert C. Packard, DMD, MS; David P. Langston, DDS; and Pollard R. Runnels, III, DDS, Defendants.**

**Bankruptcy No. 86–02098–BKC–SMW. Adv. 86–0620–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

Sept. 29, 1986.

---

Patricia A. Redmond, Miami, Fla., for debtor Sheppard's Dental Centers, Inc.

Jim Dahl, Hercules & Lavery, Dallas, Tex., for defendant Robert C. Packard.

Francis Carter, Steel, Hector & Davis, Miami, Fla., for Richard Burdge.

Gary Zwickel, Ackerman, Bakst, Lauer, Gundlach & Zwickel, P.A., West Palm Beach, Fla., for defendants Family Health Care Systems, Inc. and DC Dentalcare Corp.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on for trial on September 22, 1986, upon an adversary proceeding filed by plaintiff, Sheppard's Den-

tal Centers, Inc. ("Sheppard's"), seeking declaratory relief and to set aside certain post-petition transfers pursuant to 11 U.S.C. § 549. The Court having heard the testimony and examined the evidence presented, observed the candor and demeanor of the witnesses, considered the pleadings and arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

Sheppard's is a corporation organized to manage a dental practice operated at eight locations in and around Dallas, Texas. Sheppard's has few tangible assets. Its business premises and equipment are for the most part leased, and the parties agree that there is no apparent equity in either its leased realty or leased personalty, or the personalty owned by Sheppard's, which is fully encumbered by substantial liens. Sheppard's only valuable asset is the right to manage a dental practice conferred by a Management Agreement dated September 25, 1984 (the "Management Agreement"), between Sheppard's and David P. Langston, D.D.S., P.C. ("Langston"), a dental corporation duly licensed in the state of Texas. Simply stated, prior to these Chapter 11 proceedings, Langston performed dental services for its patients, and Sheppard's provided administrative services to Langston including management, furnishing office space, equipment, furniture, supplies, laboratory work, front desk personnel, marketing, and other administrative services. By the time Sheppard's filed its Chapter 11 petition, its financial situation was hopeless. Out of cash and unable to meet payroll, it entered into a series of transactions which are now before the Court for scrutiny.

Within a few days after this Chapter 11 case was filed, Langston sold and assigned its dental practice to Robert C. Packard, D.D.S. ("Packard") and Pollard R. Runnels, III, D.D.S. ("Runnels"), and Sheppard's entered into a rather vague interim agreement whereby DC Dentalcare Corporation ("DC"), a wholly-owned subsidiary of Family Health Care Systems, Inc. ("Family Health") would operate and manage Shep-

pard's business pending a sale of all Sheppard's assets in this court. On August 14, 1986, this Court entered an order approving the interim arrangement for DC to operate Sheppard's business with the proviso that such management by DC not afford DC an advantage over other bidders desiring to purchase Sheppard's assets. This Court approved the interim agreement for the purpose of providing continuity of care to dental patients until a sale could be held in this court on September 10, 1986. On that date, however, defendant Southwest SDC, Inc. ("Southwest"), a potential bidder at the sale, raised questions concerning the nature and extent of the property to be sold and, in addition, raised serious questions concerning the conduct of DC and Family Health, including, among other things, allegations that DC had removed patient dental records and was systematically stripping the estate of value for its own benefit. Because of the seriousness of these charges, with the consent of the parties, this Court appointed an Examiner and directed counsel for the debtor-in-possession to file forthwith an adversary proceeding to determine what property constitutes property of this estate within the meaning of § 541 and to avoid any improper transfers pursuant to §§ 548 and 549 of the Code. The sale of Sheppard's assets was continued to October 1, 1986, to allow the Examiner an opportunity to complete his investigation and file a report, as well as to allow this adversary proceeding to be tried and determined on an expedited basis.

Pursuant to the Court's instruction, the debtor-in-possession has filed this adversary proceeding seeking declaratory relief as to what constitutes property of this estate and seeking to avoid certain post-petition transfers made by Sheppard's at the instance of DC, a defendant. Southwest, another defendant, has cross-claimed seeking relief similar to that sought by Sheppard's.

 Under the Bankruptcy Code, the concept of property of a debtor's estate is an expansive one. *See In re Plunkett*, 23

B.R. 392 (E.D.Wis.1982); *see also In re Ryerson,* 739 F.2d 1423 (9th Cir.1984). Section 541(a)(1) of the Code defines property of the estate and includes within its ambit all legal or equitable interests of a debtor in property as of the commencement of the case wherever located and by whomever held. At the commencement of this case, Sheppard's was a party to the Management Agreement with Langston, which gave it the exclusive right to manage Langston's substantial dental practice. None of the parties contends that the Management Agreement is anything other than an executory contract within the meaning of § 365 of the Code. Defendant DC argues, however, that the contract was terminated just prior to the inception of these Chapter 11 proceedings. It is not clear from the rather sketchy evidence presented that a pre-petition termination in fact occurred, but even assuming without deciding that such was the case, the attempted termination without apparent consideration to Sheppard's, effected on the eve of bankruptcy at a time when Sheppard's was, by the admission of all parties, insolvent, is a transfer voidable by a debtor-in-possession under § 548(a)(2), and this Court will not hesitate to set aside that transfer, if it in fact occurred, for the benefit of this estate. It follows too that any subsequent attempt by DC to transfer property of Sheppard's estate, including any rights or benefits flowing to Sheppard's under the Management Agreement, must also be set aside as post-petition transfers of property voidable under § 549.

■ The focus of argument at trial was the nature and legal status of files of dental patients treated by Langston which are now in the hands of Packard and Runnels, as Langston's assignees and successors-in-interest. Counsel for defendant Langston argues correctly that under the applicable laws of the state of Texas regulating the profession of dentistry, only a licensed dentist may own such patient files. DC has joined in this contention, notwithstanding its having entered into an agreement with Packard which on its face appears to violate the Texas statute by purporting to give DC the right to purchase patient files for nominal consideration. Ownership of the patient files, however, is not the real issue. The Management Agreement did not convey Langston's files to Sheppard's. Rather, it gave Sheppard's the exclusive right to manage and handle the commercial and administrative aspects of Langston's dental practice, now in the hands of Packard and Runnels. The property right involved here is not ownership of the documents which comprise the patient dental files, but the valuable commercial relationship between the Sheppard's clinics on the one hand and the Langston dental practice and the Langston patients on the other.

■ This Court is not the first to recognize that property which is both intangible and transitory may nevertheless constitute property of a debtor's estate within the meaning of § 541. In *Glosband v. Watts Detective Agency, Inc.,* 21 B.R. 963 (D.Mass.1981), the United States District Court recognized that lists of employees, lists of customers, and even corporate goodwill were all valuable property of a debtor's estate within the meaning of § 541, the Court further noting that goodwill is a property right which a court will regard as carefully as it would visible tangible property. 21 B.R. at 975. Notwithstanding that employees and customers of the security guard service in *Glosband* were free to transfer their allegiance at will, the district court found that such relationships nevertheless constituted valuable property of a going concern. So, too, here, the relationship between Sheppard's and Langston and Langston's patients is the only real reason for Sheppard's economic existence and the fundamental source of revenue for Sheppard's.

■ Having recognized the economic relationship portrayed here, this Court must exercise its broad powers to preserve and protect the property of this estate for the benefit of its creditors. To further that end, the Court must also consider the conduct of DC as manager and operator of the business of Sheppard's. Because Shep-

pard's, as debtor-in-possession, has a fiduciary obligation to creditors and other parties in interest, DC, as manager of Sheppard's, may not in dealing with Sheppard's property conduct itself in a manner inconsistent with Sheppard's fiduciary duty. This stricture was embodied in this Court's order of August 10, 1984, which directed that this Court's interim approval for DC to manage Sheppard's would not be interpreted in such a way as to confer on DC an advantage over any other bidder.

The Court having here found and concluded that the valuable relationship with and opportunity to earn revenue from Langston's patients is property of Sheppard's estate, it follows that pursuant to § 549 this Court should set aside any transfer by Sheppard's made at the instance of DC to or for the benefit of DC which deprives this estate of assets of any kind without fair consideration and without the prior authorization of this Court granted after notice and a hearing. Such assets include, for example, the rights under the Management Agreement, the relationship with the Langston patients, the relationship with the Langston employees, contractual relationships with landlords, equipment lessors, trade vendors, and other parties dealing with or extending credit to Sheppard's, goodwill, telephone numbers used by Sheppard's prior to these proceedings, and other similar intangible property. Accordingly, pursuant to § 549 of the Code, this Court will avoid all the agreements among defendants DC, Family Health, Packard and Runnels, subject, of course, to reinstatement of such agreements if, and only if, DC becomes the successful bidder for the Sheppard's assets. Pending that sale and pending further order of this Court, this Court's order of September 11, 1985, shall remain in full force and effect.

A separate Final Judgment of even date has been entered in conformity herewith. Addressing other matters raised at trial, by separate orders of even date, this Court has denied without prejudice a motion filed by DC seeking a change of venue and has further clarified the scope of the Court's order of September 11, 1986, to, among other things, prohibit DC from copying patient files.