In re Kathie L. THOMPSON and Billie Jo B. Baxley, A Partnership d/b/a Subway, Debtors.

Kathie L. THOMPSON and Billie Jo B. Baxley, A Partnership d/b/a Subway, Plaintiffs,

v.

DOCTOR'S ASSOCIATES, INC. and Subway Restaurants, Inc., Defendants.

Bankruptcy No. G93–21370–REB. Adv. No. 93–2062.

United States Bankruptcy Court, N.D. Georgia, Gainesville Division.

June 23, 1995.

Harmon T. Smith, Jr., Gainesville, GA, for plaintiffs.

Frank W. Deborde, Mark J. Smith, Morris, Manning & Martin, Atlanta, GA, for defendants.

### *ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

ROBERT E. BRIZENDINE, Bankruptcy Judge.

This adversary proceeding is before the Court on cross-motions for summary judg-

ment. In their complaint, Plaintiffs assert that Defendants' prepetition termination of Plaintiffs' franchise agreement and sublease in connection with Plaintiffs' operation of a Subway sandwich shop restaurant and the resulting dispossession of Plaintiffs from the business premises constitutes a voidable preferential transfer under 11 U.S.C. § 547 and/or a fraudulent conveyance under 11 U.S.C. § 548. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (H). Upon consideration of the motions, the record, and argument of counsel, the Court concludes that Defendants' motion should be granted and that Plaintiffs' motion should be denied.

 Summary judgment may be granted pursuant to Fed.R.Civ.P. 56, applicable herein by and through Fed.R.Bankr.P. 7056, if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The movant has the initial burden of showing that there is no genuine issue of material fact and must identify those evidentiary materials listed in Fed.R.Civ.P. 56(c) that establish the absence of such an issue. Further, the Court must view the evidence in the light most favorable to the nonmoving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991); Clark v. Union Mutual Life Insurance Co., 692 F.2d 1370, 1372 (11th Cir. 1982); see also Fed.R.Civ.P. 56(e).

Plaintiffs assert that Defendants' termination of the aforesaid franchise agreement and sublease, along with their resulting reacquisition of possession, not only ended Plaintiffs' operation of the sandwich shop, but also enabled Defendants to reap a substantial windfall. By virtue of this termination, Plaintiffs claim that Defendants were able to

resell immediately the right to operate this Subway restaurant for a purchase price over five times the amount needed to cure the arrearages owed Defendants. Plaintiffs maintain that Defendants' actions amount to an involuntary transfer that was preferential and/or was for less than reasonably equivalent value while they were insolvent or which rendered them insolvent. In response, Defendants contend that Plaintiffs have failed to show an entitlement to relief under either of the aforesaid causes of action as a matter of law based on their valid, prepetition termination of the aforesaid agreements by reason of admitted defaults thereunder and in accordance with state law and a state court consent order.

The facts are as follows. Early in 1991, Plaintiffs entered into a contract to purchase a Subway sandwich shop located in Cumming, Georgia from Ronald H. Barnes. Barnes financed a portion of the $50,000 purchase price and the remainder was paid by Plaintiffs from a loan secured by a second mortgage on the principal residence of Co–Plaintiff Billie Jo Baxley.[1] Thereafter, on February 27, 1991, Plaintiffs entered into a franchise agreement with Doctor's Associates to operate the business as a Subway sandwich shop restaurant.[2] This agreement required Plaintiffs as franchisees to pay royalties and advertising fees and contained certain default and termination provisions. See Franchise Agreement, attached to Defendants' notice of filing of discovery as Exhibit "D–1." Plaintiffs gained possession of the business premises through an assignment and assumption of Barnes' interest in a sublease with Subway. Plaintiffs also assumed Barnes' interest in an equipment lease with a corporate division of Doctor's Associates.

Plaintiffs commenced operation of the restaurant, but they subsequently began experi-

---

1. The precise amount financed and borrowed is unclear. Although Co–Plaintiff Thompson states that $20,000 was financed by Barnes with $30,-000 being paid from the proceeds of a loan obtained by Co–Plaintiff Baxley from Fleet Finance, Baxley states that the total sum of $44,-000 was actually borrowed against her property. See Deposition of Kathie L. Thompson at 20–22; Deposition of Billie Jo B. Baxley at 17–19.

2. As part of this transaction, Barnes and Doctor's Associates terminated their franchise agreement and Barnes was released from his obligations to Co–Defendant Doctor's Associates. Whereas Doctor's Associates owns the copyrights and trademarks for the "Subway" name, Subway Restaurants, Inc., a subsidiary of Doctor's Associates, Inc., develops franchise locations and works with franchisees.

encing financial problems and had difficulty making the payments under these agreements beginning in August, 1992. From June, 1992 through October, 1993, their lease payments were late. They were regularly notified of their failure to pay rent and other charges under the aforesaid agreements; nonetheless, Plaintiffs deny that they were continually in default. Sometime during 1992, Plaintiffs decided to try to sell the sandwich shop. Under the franchise agreement, upon payment of a transfer fee, their rights could be sold and transferred to a natural person meeting certain requirements as long as the franchisor was afforded a right of first refusal and Plaintiffs were not in default. *See* Franchise Agreement ¶ 9(a). In addition, prospective franchisees were required to meet various criteria, such as access to a certain amount of reserve capital and a willingness to be an on-site owner/operator. Contrary to Defendants' assertions herein, Plaintiffs claim they were never made aware of this approval process for proposed franchisees. Plaintiffs also contend that Subway failed to work with them in their efforts to find a buyer.

Although several parties expressed an interest in purchasing the restaurant, no agreement to sell was ever finalized. Plaintiffs allege that the first prospective franchisee was discouraged by Defendants, although Defendants claim that this prospect's application was not approved, in part, because he intended to be an absentee owner. A second potential franchisee, Stanley Willis, tendered an offer in the amount of $100,000, but it was refused by Plaintiffs because they wanted any offer to include a substantial cash down payment, which would have enabled Co-Plaintiff Baxley to pay off the aforementioned loan that was secured by a second mortgage on her home. Similarly, a final potential purchaser, who contacted Plaintiffs during the summer of 1993, never reached an agreement because of Plaintiffs' continued insistence that any acceptable offer had to include a certain amount of cash. Subway asserts that additional grounds existed for denying any proposed assignment or sale of Plaintiffs' franchise interest.

Meanwhile, based upon Plaintiffs' alleged failure to make certain payments under the franchise agreement, Subway initiated a series of dispossessory actions in the Magistrate Court of Forsyth County, Georgia, which eventually resulted in the entry of several consent orders. Based on Plaintiffs' alleged failure to cure an arrearage as provided in the first such order, a second dispossessory was filed on July 2, 1993. In these actions, Subway relied on the cross-default provision in its sublease and contended that Plaintiffs' failure to make payments under the franchise agreement constituted a breach under the sublease.

Pursuant to a consent order entered on or about July 22, 1993 in the second dispossessory action, Plaintiffs agreed, in an effort to satisfy a total arrearage of $11,954.27, to a repayment schedule consisting of weekly installments in the amount of $600. Both Baxley and Thompson, individually, agreed to the terms of said order. In the event Plaintiffs missed any payment, this order further provided that the clerk of the magistrate court would immediately issue a writ of possession, without notice, upon the filing of an affidavit by Subway's lawyer stating the facts constituting the default.

Subsequently, by letter dated September 21, 1993, Doctor's Associates notified Plaintiffs that it had elected to terminate the franchise agreement based on Plaintiffs' breach in failing to pay certain royalties, advertising fees, and equipment rental totalling $12,337.34. This notice further provided that Plaintiffs could cure the alleged default by forwarding payment within ten days after receipt of the notice. In reliance upon the cross-default provisions in the sublease, Subway sent a similar notification dated September 21, 1993 in which it made demand for possession of the premises, while also providing notice of a cure period.

On October 6, 1993, Subway filed a third dispossessory action claiming that Plaintiffs' failure to pay the above-stated fees and expenses under the franchise agreement constituted a default under the sublease. In accordance with the previous consent order, Subway's counsel also filed an affidavit on October 6, 1993 averring the facts of Defendants'

default. A writ of possession was obtained from the clerk of the magistrate court whereupon Plaintiffs were dispossessed on October 15, 1993. Defendants contend that on said date Plaintiffs owed them approximately $26,000 for past due charges and fees under the franchise agreement, sublease, and equipment lease. Plaintiffs filed a voluntary petition for relief under Chapter 11 on October 25, 1993.

Shortly thereafter, on November 3, 1993, Doctor's Associates sold the right to operate the Cumming Subway shop to Joe P. Brown for the total sum, including notes and cash, of approximately $135,000. As a part of this transaction, Brown entered into a new franchise agreement (for a twenty year term with an option to extend) with Doctor's Associates and a new sublease with Subway. Brown paid $44,180.84 in cash at closing and, in addition, executed a promissory note for $15,-000, due in one month from the date of closing. Further, Brown purchased the equipment and granted a purchase money security interest to Doctor's Associates to secure another promissory note in the amount of $80,000, said sum representing at least the minimum purchase price for the equipment.[3]

The thrust of Plaintiffs' argument is that Defendants did not assist them in their efforts to sell, although Defendants were aware of Plaintiffs' financial troubles and their interest in and need to realize a fair price for their restaurant. Instead, Defendants allegedly "pushed on through" to obtain an involuntary repossession and, after satisfying an antecedent debt in the amount of $26,000, reaped a net windfall of approximately $110,-000. By reason of the aforesaid, Plaintiffs argue that the termination and dispossession constituted a fraudulent transfer under 11 U.S.C. § 548, because they did not receive reasonably equivalent value or, at a minimum, that the payment Defendants received on their antecedent debt was preferential and voidable under 11 U.S.C. § 547.

In response, Defendants contend, among other things, that termination of Plaintiffs'

interests in the franchise agreement and sublease and their resulting dispossession were properly conducted in accordance with the terms of said agreements, state law, and a state court consent order. Under the agreements and agreed order of July 22, 1993, Plaintiffs were in default which was not timely cured despite ten days written notice. Further, Plaintiffs had no written purchase contracts or acceptable cash offers in regard to the sale of their interests. In a bankruptcy case, Defendants argue, the treatment of executory contracts or leases is governed exclusively by Section 365 and, pursuant to Section 365(c), properly terminated agreements are unassumable. In any event, they assert, neither Section 548(a) nor Section 547(b) of the Bankruptcy Code was intended to apply to such a valid, prepetition termination of an executory agreement or sublease.

Even if Section 548 or Section 547 did apply to such a termination, Defendants claim, the mere extinguishment of a contract right by virtue of a default does not constitute a "transfer." Moreover, they maintain, there could be no transfer of "an interest of the debtor in property" because Plaintiffs had no property right to transfer once they breached the agreements. At most, Plaintiffs possessed expired rights, which amounts to no rights. Defendants, therefore, assert that Plaintiffs were not entitled to receive any value in connection with any alleged transfer because such rights were worthless upon default.

■ Because dispossession occurred pursuant to an agreed consent order, which Plaintiffs never contested, Defendants further argue that any reconsideration by this Court of the circumstances surrounding the issuance of the dispossessory writ by the state court is precluded under the doctrine of *res judicata.* In addition, Defendants contend that to overturn a rightful termination and dispossession of a defaulting tenant on such grounds would constitute an impermissible displacement of state law. *See generally Metro Water and Coffee Services, Inc. v.*

---

**3.** Based on a review of the closing documents, bill of sale, and closing adjustments statement, it appears that the total purchase price for this

equipment might possibly have been greater than $80,000. *See* Defendants' Exhibit D–66.

*Rochester Community Baseball, Inc. (In re Metro Water and Coffee Services, Inc.),* 157 B.R. 742 (Bankr.W.D.N.Y.1993). Plaintiffs maintain, and this Court agrees, that with respect to the issue of *res judicata,* the only issue before the state court was whether sufficient grounds existed under the agreements to support dispossession. Issues of fraudulent conveyance or voidable preferential transfer under federal bankruptcy law were neither presented nor determined. Accordingly, Defendants' *res judicata* argument is rejected.

■ Under either cause of action asserted by Plaintiffs herein, the Court must first determine if there was a transfer of a property interest. Whereas an interest in property is determined by applicable state law, federal bankruptcy law is applied to decide whether a transfer has occurred and, if so, whether such transfer was actually or constructively fraudulent under Section 548(a) or voidable as a preference under Section 547(b). As used in the Bankruptcy Code, the term "transfer" is broadly defined in Section 101(54) and includes every mode, both voluntary and involuntary, of "parting with property or with an interest in property." *See Besing v. Hawthorne (In re Besing),* 981 F.2d 1488, 1492–94 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 79, 126 L.Ed.2d 47 (1993).

■ Under a lease, the parties agree to various contractual rights and duties and the lessor or landlord conveys to the tenant an estate in real property. In conveying this leasehold interest, the landlord fully parts with possession and the right of possession for the lease term. Absent permission by the tenant, the landlord generally has no right to enter upon the premises except to collect rents or prevent waste. Upon default, however, in accordance with the terms of the lease and state law, the landlord may terminate the lease and use the remedies at his disposal to enforce his rights. Such remedies include the right to commence dispossessory proceedings.

■ As a result of the termination of a leasehold and dispossession, a tenant/franchisee, such as Plaintiffs herein, loses the right to possession and the landlord/franchisor gains something that he did not have before, to wit: the right to reenter upon the premises immediately and take possession. Correspondingly, with such possession, the landlord/franchisor can lease the premises to a new entity, sell the equipment and real property, if he in fact owns same, and/or negotiate a new franchise agreement for the operation of the business. The right of possession, as well as possession itself upon termination or expiration of the franchise agreement or sublease, is a property right and the involuntary transfer of same constitutes a transfer of an interest in property as described in Section 101(54). *See generally In re Indri,* 126 B.R. 443, 446 (Bankr.D.N.J.1991); *Pinto v. Philadelphia Fresh Food Terminal Corp. (In re Pinto),* 89 B.R. 486, 496 (Bankr. E.D.Pa.1988); *accord Metro Water, supra,* 157 B.R. at 745 and 746 n. 6; *but see In re Sullivan County Regional Refuse Disposal Dist.,* 165 B.R. 60, 76–77 n. 50 (Bankr.D.N.H. 1994).[4]

Having determined that a transfer occurred, the Court will next proceed with its analysis of Plaintiffs' theory of recovery arising under Section 548. First, the Court will address Defendants' arguments that Section 548 is not applicable on the facts presented herein. As previously noted, Defendants, relying on cases such as *Metro Water, supra,* assert that Section 548 was never intended to invalidate a prepetition, involuntary termination and dispossession properly conducted in accordance with state law. 157 B.R. at 746–47. Additionally, Defendants argue,

---

**4.** Although the court in *Metro Water, supra,* concluded that a rightful, non-collusive termination by reason of defaults is not a fraudulent transfer, it determined, nonetheless, that termination of an executory contract is a transfer. 157 B.R. at 746 n. 6; *see also Lloyd McKee Motors, Inc. v. Chrysler Corp. (In re Lloyd McKee Motors, Inc.),* 166 B.R. 725, 728–29 (Bankr.D.N.M.1993). The summary of *Metro Water* presented in *Callia v.*

*Original Great American Chocolate Chip Cookie Co.,* 1994 WL 151091, 1994 U.S.Dist. Lexis 4748 (E.D.La. Apr. 12, 1994), fails to recognize this distinction. Further, *Sullivan v. Willock (In re Wey),* 854 F.2d 196 (7th Cir.1988), as cited by Defendants, concerned the forfeiture of a down payment and is distinguishable herein because it did not concern the loss of possession in addition to the termination of a contract.

upon the filing of a bankruptcy petition, Section 365 exclusively controls the disposition, use, or sale of executory contracts, and Section 548 cannot be used to circumvent this process by reviving such agreements in order to cure same under Section 365. *See Coast Cities Truck Sales, Inc. v. Navistar International Transportation Co. (In re Coast Cities Truck Sales, Inc.)*, 147 B.R. 674, 677–78 (D.N.J.1992), *aff'd without op.*, 5 F.3d 1488 (3d Cir.1993); *Creditors' Committee v. Jermoo's Inc. (In re Jermoo's Inc.)*, 38 B.R. 197, 204 (Bankr.W.D.Wis.1984).

■■■■ To conclude categorically, however, that a bankruptcy estate may never have a right of recovery under Section 548 in any situation concerning the prepetition termination of a franchise agreement or sublease would be inconsistent with the Bankruptcy Code and could, therefore, improperly harm creditors. If a franchise agreement or sublease has been breached and validly terminated prior to bankruptcy, it cannot be revived solely by virtue of a bankruptcy petition. Filing for bankruptcy relief does not confer new rights on a debtor in regard to these terminated agreements and a debtor is not permitted to cure his defaults and/or assume such agreements. Notwithstanding Defendants' assertion to the contrary, even if such agreements cannot be reinstated, this Court does not believe the provisions of Section 365 absolutely shield such termination/transfers from scrutiny under Section 548(a). *See e.g. Indri, supra,* 126 B.R. at 446–47; *Fitzgerald v. Cheverie (In re Edward Harvey Co.)*, 68 B.R. 851, 859–60 (Bankr.D.Mass.1987); *contra Coast Cities, supra,* 147 B.R. at 678.[5]

As noted above, the court in *Metro Water, supra,* held that the termination of the concession agreement in question therein, even though it constituted a transfer, was not a fraudulent transfer. 157 B.R. at 746. Al-though it otherwise noted the commercial problems that would be generated by avoiding such transfers under Section 548, the court nevertheless defined its ruling in terms of the circumstances surrounding the termination. *Id.* at 747. Specifically, it held that a prepetition, non-collusive, involuntary termination of an executory concession agreement, based upon material defaults in the ordinary course of commercial affairs and in compliance with the terms of such agreement, could not be set aside as being actually or constructively fraudulent under Section 548(a). *Id.* at 746. Thus, the court tested the prepetition termination and transfer presented therein against Section 548(a), and its reasoning does not preclude such analysis herein. *Accord McKee Motors, supra,* 166 B.R. at 728–29.

■■■■ The court in *Metro Water, supra,* did restrict its fraudulent conveyance analysis to debtor collusion under Section 548(a)(1). 157 B.R. at 745–47. In the context of an involuntary transfer, however, inquiry pursuant to Section 548 cannot logically be limited to terminations with alleged debtor involvement because debtor consent or participation is normally absent in such situations. Section 548(a) is designed, in part, to afford creditors some amount of protection in those instances whereby a debtor unwittingly forfeits a valuable asset or a creditor fraudulently causes such a loss. The scope of this avoidance power as presently set forth in the Bankruptcy Code is not determined solely by reference to the debtor's intent (Section 548(a)(1)), but is equally defined in terms of the objective effects of an alleged transfer upon a debtor's creditors (Section 548(a)(2)).[6]

■■■■ The present case illustrates the importance of having both subsections of Sec-

---

5. The Court understands the implications of such an analysis as introducing some element of uncertainty in connection with involuntary terminations. Termination in compliance with applicable nonbankruptcy law and a state court judgment of eviction finding same to have been validly done will be highly persuasive. Ultimately, however, such findings are not completely congruous with the standards this Court must apply under Section 548(a).

6. The scope of such avoidance powers is not defined by what state law allows as fair or acceptable, although in this case, as previously noted, a prepetition termination of a franchise agreement and sublease on grounds of default, executed in compliance with state law, is entitled to substantial consideration.

tion 548 available in evaluating an involuntary transfer of property. Plaintiffs' claims herein under Section 548(a) are based upon the alleged lack of cooperation by Defendants in connection with Plaintiffs' efforts to reach an agreement with a potential third party buyer. This lack of cooperation or assistance, eventually, resulted in Defendants' termination of their franchise and enabled Defendants to realize a substantial monetary gain from their subsequent transaction with Brown. Plaintiffs have obviously alleged no collusion on their part in regard to the involuntary termination and dispossession in issue, and absent allegations of same, their recovery, if any, can only arise under Section 548(a)(2). *See generally Pinto, supra,* 89 B.R. at 498–99.[7]

The Court recognizes that not every transfer of an allegedly valuable property right is recoverable irrespective of the magnitude of the loss. The fraudulent conveyance provisions were not designed to redress every deprivation of value potentially realizable by a debtor and its creditors, and to allow otherwise would disrupt normal commercial expectations. *See Metro Water, supra,* 157 B.R. at 746–47. Further, recovery under Section 548(a)(2) is not contingent upon whether or not such allegedly lost value would be important to a debtor's reorganization efforts, or whether the terminated lease or contract was a "good" one from the perspective of the debtor and/or his creditors. *But see Pinto, supra,* 89 B.R. at 499. Thus, the Court is mindful in this case that the alleged loss of property rights through the termination of an interest in the lease and franchise agreement in question, properly conducted in accordance with state law, is simply insufficient, in and of itself, to create a claim under Section 548(a).

Applicability of Section 548(a)(2) herein is not inconsistent with the reasoning in *Metro Water, supra. See generally* 157 B.R. at 747. The focus is not being shifted from the intent

of the debtor to that of the franchisor; rather, the analysis centers on the objectively verifiable harm caused by such Defendant/franchisors' conduct in frustrating or prohibiting Debtor/franchisees from properly assigning their interest in the subject agreements as more fully discussed hereinbelow. Yet, analysis of involuntary transfers under the constructive fraud provisions of Section 548(a)(2), as tempered by the caveats noted above, does create a problem when this provision is actually applied.

To set aside a transfer under Section 548(a)(2), assuming insolvency can be shown, it must be established that the debtor received "less than a reasonably equivalent value." This legal standard, however, seems difficult to implement in the situation confronted herein. Termination of a franchise agreement or sublease on grounds of default often results in a loss of value from the viewpoint of the franchisee or sublessee. This loss of value, however, is not necessarily compensable because, at most, the franchisee or sublessee only holds a contractually defined franchise and/or leasehold interest. Thus, upon termination, he may not be entitled to any going concern value generated by operation of the franchise at the subject premises. As previously discussed, without a legally or equitably recognized right to such value by the franchisee or sublessee, loss of same standing alone does not result in a compensable injury and, as stressed above, is insufficient to permit a recovery under this subsection. *Accord Metro Water, supra,* 157 B.R. at 747.[8]

Nevertheless, this Court believes that in certain situations, Section 548(a)(2) may have practical relevance in terms of its application to the prepetition termination of a franchise agreement or sublease in terms of constructive fraud. For example, although a tenant/franchisee typically may not expect to realize any "value" upon the valid termi-

---

7. In addition, the Court notes that the relief claimed herein may be more properly analyzed under a state law fraud claim brought pursuant to Section 544. Although at a hearing Plaintiffs' counsel alluded to the fact that such a fraud claim may be added to the complaint, Plaintiffs have not done so. In any event, given this late date, it is unlikely that such an amendment would even be allowed.

8. In some instances, state law may provide a remedy, for example, under a theory of recovery based on unconscionable forfeiture or loss of tenant improvements.

nation of such an agreement, it may, when permitted by the terms of the sublease or agreement, have the right to assign or transfer its interests upon certain conditions being satisfied prior to such termination. Further, the landlord/franchisor might be found to have intentionally interfered in a wrongful and substantial manner in connection with the efforts of the tenant/franchisee to transfer its interests, such as by inducing a prospect not to enter into an agreement with said tenant/franchisee.

Under the factual scenario suggested above, the potential market, which existed for such assignment and which may have generated reasonably equivalent value, could have been adversely affected. As a result of said interference and accompanying terminations, the tenant/franchisee is effectively deprived of his right to assign or sell his interest and the rights of creditors may have been prejudiced. A tenant/franchisee could, therefore, conceivably in such instance have suffered a compensable financial injury to the extent that the transfer via contract or lease termination could be set aside as being constructively fraudulent pursuant to Section 548(a)(2).[9]

In the present case, however, even if Defendants failed to assist Plaintiffs, Plaintiffs have not established that Defendants had any duty to assist Plaintiffs in their efforts to sell. Further, they have not shown that Defendants acted in a manner such that Plaintiffs were effectively denied any realistic or reasonable opportunity to assign or sell their interests. The Court understands Plaintiffs' predicament in losing their various contractual interests associated with their sandwich shop. The record herein, however, does not disclose a basis for concluding that Plaintiffs received less than reasonably equivalent value as a result of the termination and loss of their interests by reason of default under the analysis discussed hereinabove.

Moreover, Plaintiffs' argument which evaluates the effect of the termination/dispossession in terms of Defendants' subsequent transaction with Brown raises several problems. A former franchisee's right to share in any proceeds generated by a new franchise agreement is questionable, given the tenuous connection between the interests of the former franchisee prior to termination and the interests created by a subsequent agreement with a new party. Similarly, valuation of the interest transferred at termination and dispossession is difficult because the bundle of rights lost by Plaintiffs is not the same bundle of rights Defendants later transferred to Brown.

For instance, an analysis of the transaction with Brown does not support the allegation that Defendants virtually assigned Plaintiffs' interests to Brown. Brown did not merely assume Plaintiffs' existing obligations under the franchise agreement and sublease; instead, he entered into new agreements for a new term. Additionally, whereas Plaintiffs had only been leasing the equipment, Brown bought it outright for the sum of at least $80,000. Because Brown's purchase of the equipment ended the future rental stream derived therefrom, the price paid for such equipment was not a windfall, but a replacement of the equipment lease and corresponding rent stream. Although Plaintiffs may have had the right to assign their interest in the equipment lease, absent ownership, they would never have been entitled to sell the equipment outright and thus realize its value in monetary terms.

When deducted from the total consideration received by Defendants in the Brown transaction, the $80,000 purchase price for the equipment significantly reduces the amount of any perceived windfall. Even if the former franchisee could submit a legally supportable or credible claim of entitlement to such an interest, assigning it a realistic value is further complicated by factors such as the lack of any guarantee that future payments would be made as well as other risks of default by the new franchisees. For these reasons, in this Court's opinion, there is no way to attribute a value to the Brown

---

9. As previously noted, such a claim may be more appropriately asserted and analyzed under a

state law fraud theory.

transaction for purposes of analyzing the termination of Plaintiffs' property interests.[10]

■ Even accepting Plaintiffs' contention that Brown's property rights are comparable to the ones they lost and that such interest could in fact be valued, the Court rejects Plaintiffs' contention that they have established their alleged entitlement to the money and promissory notes Defendants received from Brown. Plaintiffs' argument provides no principled method for restricting the period of time during which Doctor's Associates as franchisor would be liable to Plaintiffs, as former franchisees, for any benefit thereafter obtained by reason of entering into a new franchise agreement on more favorable or profitable terms. There is no logical way to limit the circumstances under which a former defaulting franchisee could intervene and claim the benefits resulting from a franchisor's efforts to merely mitigate his damages. The terms of Brown's franchise and sublease were to extend beyond the terms originally granted to Plaintiffs. Without a sufficient way to limit such intervention, under Plaintiffs' argument, a franchisor's payments to a former franchisee/sublessee could conceivably continue on *ad infinitum* under a de facto agency relationship. For all of the above reasons, the Court concludes that Plaintiffs have failed to demonstrate a sufficient factual basis in order to prevail under Section 548(a)(2).

■ As previously noted, based on the consideration received by Defendants in the Brown transaction, Plaintiffs also contend that Defendants' termination of the franchise agreement, equipment lease, and sublease constitutes a voidable preferential transfer under Section 547. This contention, however-

er, fails for several reasons.[11] Initially, the Court notes that given the facts in this bankruptcy case, such a claim, even if successful, carries with it an aspect of economic futility. In the event Defendants were required to disgorge the amount allegedly received as a preference, whatever that sum turned out to be, a substantial portion of that amount would be returned to them, since a sizeable portion of the debt structure in this case consists of their claim.[12] Thus, the administrative resources expended in the recovery of such alleged preference would be vastly disproportionate when compared to the actual amount of any beneficial recovery for the other creditors herein.

Other factors render recovery of an alleged preference herein problematical. For instance, the transfer of an interest of Plaintiffs in property for or on account of an antecedent debt has not been established. *See* 11 U.S.C. § 547(b)(2). Although Plaintiffs parted with an interest in property upon Defendants' termination of Plaintiffs' rights under the franchise agreement, equipment lease, and sublease, the transfer of possession did not constitute payment of Defendants' claim or any portion thereof. Further, in the subsequent transaction with Brown, wherein Defendants simply negotiated a new agreement with a new franchisee, no property interest of Plaintiffs was thereby applied to an antecedent debt. Although this Brown transaction may have served to mitigate Defendants' damages under state law, the receipt of monies from such mitigation is not the equivalent of a transfer of an interest in property of Plaintiff–Debtors on account of an antecedent debt.[13]

Examination under Section 547(b)(5) reveals another problem in applying a prefer-

---

10. It appears that all of the sale proceeds were allocated to Doctor's Associates. Further, the bill of sale and closing statement assign a value to the franchise of only $2,500.

11. Such allegations are more properly directed and determined under Sections 548 or 544, not Section 547. *Compare In re Park North Partners, Ltd.*, 85 B.R. 916, 918 (Bankr.N.D.Ga.1988) (discussing foreclosure situation); *but see In re Finelli Jewelry, Co.*, 79 B.R. 521 (Bankr.D.R.I.1987) (relinquishment of purchase option in context of lease termination constituted preferential transfer).

12. In addition, as noted above, it appears that Subway Restaurants received none of the proceeds from the Brown transaction from which to satisfy the unpaid rents due under the sublease with Plaintiffs.

13. Even if the Brown transaction could somehow function as a transfer of an interest in property of Plaintiff–Debtors, the Court notes that it occurred post-petition. Thus, the transfer did not occur on or within 90 days before Plaintiffs filed their bankruptcy petition, which serves as another reason for the denial of relief under Section 547(b). *See* 11 U.S.C. § 547(b)(4).

ence analysis in connection with the terminations herein. This subsection focuses on whether a creditor received more than he otherwise would have received if the case were a case under Chapter 7, as determined by the actual effect of the transfer in relation to similarly situated creditors. The Defendants' rights in the franchise agreement, equipment lease, and sublease are governed by the provisions of such agreements. Because Defendants retained at all times a reversionary interest in the property in question, these property rights, as opposed to payments on any claims under such agreements for prepetition charges and rents, are not subject to the distributive scheme set forth under Chapter 7.

Further, to the extent Plaintiffs equate the Brown transaction with the assumption and assignment of a lease in bankruptcy, Defendants would have the right to be paid the amount of any arrearage owed to them under the agreements upon such assumption and assignment; otherwise, they would be entitled to have possession of their property returned to them. Hence, by virtue of the termination and dispossession, Defendants have not received more than they would have been entitled to receive in a case under Chapter 7. For all of the above reasons, the Court concludes that Plaintiffs have not established a sufficient factual basis in order to prevail under Section 547(b).

Based on the foregoing, the Court concludes that Plaintiffs have failed to demonstrate that they are entitled to a judgment as a matter of law. Further, Plaintiffs have failed to show the existence of a genuine dispute of any material fact as to preclude entry of summary judgment in favor of Defendants. Accordingly, it is

**ORDERED** that Defendants' motion for summary judgment is **granted** and that Plaintiffs' motion for summary judgment is **denied.**

The Clerk is directed to serve a copy of this Order upon counsel for Plaintiffs and counsel for Defendants.

**IT IS SO ORDERED.**