In re LLOYD McKEE MOTORS, INC., a New Mexico corporation, Federal ID No. 85–0130433, Debtor.

LLOYD McKEE MOTORS, INC., a New Mexico corporation, Plaintiff,

v.

CHRYSLER CORPORATION, a Delaware corporation, and Quality Jeep/Eagle, Inc., a New Mexico corporation, dba Quality Jeep/Eagle by DiLorenzo, Defendants.

Bankruptcy No. 11–91–12894 M A.
Adv. No. 92–1297 M.

United States Bankruptcy Court, D. New Mexico.

Oct. 28, 1993.

William T. Caniglia, Albuquerque, NM, for plaintiff Lloyd McKee Motors, Inc.

Jonathan Sutin and Gail Gottlieb, Albuquerque, NM, for defendant Chrysler Corp.

Peter H. Johnstone, Albuquerque, NM, for defendant Quality Jeep/Eagle, Inc.

Allan L. Wainwright, Albuquerque, NM, for K. Zangara and Zangara Dodge, Inc.

*ORDER ON MOTIONS FOR SUMMARY JUDGMENT FILED BY CHRYSLER CORPORATION, QUALITY JEEP–EAGLE, INC. AND LLOYD McKEE MOTORS, INC.*

MARK B. McFEELEY, Chief Judge.

This matter came before the Court on Chrysler Corporation's Motion for Summary Judgment; Quality Jeep–Eagle, Inc.'s Motion for Summary Judgment; and Lloyd McKee Motors' Motion for Summary Judgment or in the alternative, Motion for Partial Summary Judgment. Lloyd McKee Motors, Inc. ("McKee Motors") claims that the termination of its franchise agreement, a valuable property right of its bankruptcy estate, is voidable as a fraudulent transfer under 11 U.S.C. § 548. This Court has taken under advisement the issue of whether as a matter of law, the McKee Motors termination transaction is a "transfer" within the meaning of 11 U.S.C. § 548 of the Bankruptcy Code. Having considered the facts, the memoranda of law, the applicable law, the argument of counsel, and otherwise being fully informed and advised, the Court finds that the parties have presented disputed material facts that require this Court to deny summary judgment on this issue.

The following undisputed material facts are before the Court:

1. In 1956, Lloyd McKee Motors, Inc. ("McKee Motors") began operations as a Chrysler Plymouth dealership.

2. In 1986, Pride Dodge, Inc. began operation as a Dodge dealership. In 1986, ZMHC, Inc. ("ZMHC") was formed as a holding company for 100% of the stock in McKee Motors and Pride Dodge, Inc.[1] Mr. and Mrs. Lloyd McKee are majority stockholders of ZMHC.

3. On April 30, 1991, Lloyd McKee ("McKee") sold all of the assets of Pride Dodge, Inc. to Ken Zangara's Dodge, Inc., now known as Zangara's Dodge, Inc. After the sale, the ZMHC stockholders were: Mr. and Mrs. McKee—84.6.%, and the ZMHC, Inc. 401k Profit Sharing Trust 401K—15.4%.

4. On May 31, 1991, McKee closed the doors and ceased dealer operations of Lloyd McKee Motors, Inc. At that time, the McKee Motors employee 401k plan was being administered by ZMHC under the name, ZMHC, Inc. 401k Profit Sharing Trust (the "401k").

5. On June 3, 1991, McKee, on his own behalf and as representative of McKee Motors and ZMHC, executed a Termination Agreement and General Release (the "Termination"), which terminated all dealer franchise agreements with Chrysler Corporation and released Chrysler Corporation from all claims arising out of or related to the franchise agreements or the Termination. In exchange for its execution, the Termination provided for payment of $300,000 in cash from Chrysler to McKee Motors.

6. McKee, Frank Yaconis, Zone Manager for Chrysler Corporation, and Tom Taylor, Trustee of the 401k negotiated the terms of the Termination. During negotiations, Frank Yaconis became aware that the 401k had a cash shortage of between $450,000 and $634,000.

7. On June 3, 1991, Quality Jeep–Eagle, Inc. ("Quality") and Chrysler Corporation entered into an Agreement whereby Chrysler Corporation issued a Chrysler/Plymouth dealer franchise at the same location as the McKee Motors' franchise in exchange $100,000 from Quality (the "Quality franchise").

---

**1.** ZMHC, Inc. now owns 70% of the Pride Dodge     stock.

8. In the Agreement issuing the Quality franchise, the parties stated that they understood that a Trustee in bankruptcy might seek to set aside the Termination, and that Quality waived any right it might have had to seek reimbursement or indemnification from Chrysler Corporation as a result of any adverse ruling in the bankruptcy court. The parties also stated that the Quality franchise was to be a new Chrysler/Plymouth franchise and not an assignment of the McKee Motors franchise to Quality.

9. On June 4, 1991, two checks totalling $300,000 were transferred in consideration for the execution of the Termination.

## DISPUTED MATERIAL FACTS

1. On June 4, 1991 several checks totalling $455,000 were transferred at the time of the closing of the Termination transaction. Two checks totalling $300,000 were in consideration for the Termination. The parties, however, disagree as to what happened to the money during the closing. Chrysler maintains that the checks were handed to Mr. Dubois, attorney for McKee Motors giving McKee Motors the direct benefit of the funds. McKee Motors asserts that the money was deposited into a new 401k trust account and did not directly benefit McKee Motors. The checks were in the following amounts: (1) $200,000 check from Chrysler Corporation payable to Chrysler Corporation endorsed by Frank Yaconis, Zone Manager for Chrysler Corporation, (2) $100,000 check from Quality Jeep–Eagle, Inc. payable to Chrysler Corporation, endorsed by Frank Yaconis, (3) two checks for $75,000 each from Ken Zangara's Pride Dodge endorsed by Kenneth B. Zangara, (4) $5,000 check from McKee Motors payable to ZMHC, Inc. 401k Profit Sharing Trust.

2. The parties also disagree as to whether the McKee Chrysler franchise was automatically terminated under its provisions before the parties signed the Termination. Paragraph 28(c) of the franchise agreement provides for automatic termination without notice for several types of default, including the failure of McKee Motors to fully conduct dealer operations for seven (7) business days.

## CONCLUSIONS OF LAW

Pursuant to Bankruptcy Rule 7056, this Court shall grant summary judgment when there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Section 548 of the Bankruptcy Code provides in relevant part as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, ... that was made ... on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, ... indebted; or

(2)(A) received less than reasonably equivalent value in exchange for such transfer ...; and

(B)(i) was insolvent on the date that such transfer was made ..., or became insolvent as a result of such transfer ...;

Both sides to this dispute agree that, at its threshold, Section 548 requires a "transfer" as defined in the Bankruptcy Code. Transfer is defined in 11 U.S.C. § 101(58)[54] as follows:

... every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, ...

Chrysler Corporation argues that although the McKee Motors franchise was a valuable right to do business under certain conditions, termination of a franchise is not a transfer as a matter of law under § 548 of the Code. In the alternative, Chrysler argues that since the undisputed facts show that it could have terminated the franchise under paragraph 28(c), McKee Motors had no valuable rights to transfer on June 3, 1991. Therefore, as a matter of law, a termination of a franchise agreement that was breached by the franchisor prior to termination, is not a transfer.

Chrysler relies primarily on two cases in which franchise terminations were held not to be "transfers" under the Bankruptcy Code. In *In re Jermoo's, Inc.*, 38 B.R. 197 (Bankr.W.D.Wis.1984), the court held that the franchisor's pre-petition termination of

the debtor's franchise-dealership contract for default was not a transfer of a valuable property right under § 548 because the debtor had no property right in the franchise to transfer. The court reasoned that even though property rights are broadly defined under the Code,

> [t]he termination of a right to perform on a executory contract, according to the terms of that contract, differs from a transfer of property in this sense: the rights terminated, unlike property, are transformed. At the option of the terminating party, the rights may simply disappear, or as with other kinds of property, may be dispersed, reconveyed or retained.

*Id.* at 204.

Chrysler also relies on *In re Coast Cities Truck Sales, Inc.*, 147 B.R. 674 (D.N.J.1992). In that case, Navistar International Transportation Company, in response to defaults under its Dealer Agreement with the debtor, gave notice that it was terminating the agreement. The debtor sought to enjoin this termination in District Court, but the court denied the injunction and entered an order of termination effective May 14, 1992. Shortly thereafter, the debtor filed bankruptcy and an adversary proceeding seeking a declaration that the contract was either assumable under § 365 or that it was recoverable as a fraudulent transfer under § 548. The bankruptcy court issued a preliminary injunction ordering Navistar to comply with the Dealer Agreement. On appeal, however, the District Court reversed, holding that contract was effectively terminated prior to bankruptcy, therefore, the contract could not be assumed or revived under § 365. Moreover, the court held that the debtor's assertion that the termination was a fraudulent transfer, employing a broad interpretation of the word "transfer", was without merit stating the following:

> ... [section] 548 has never been construed, nor was it intended, to afford debtors the option of reinstating involuntarily terminated executory contracts. A necessary element for the relief sought by plaintiff under § 548 is a transfer.... [i.e.] whether Navistar's termination of the Dealer Agreement constituted a "relinquishment of a valuable property right" owned or possessed by Coast Cities.... Coast Cities possessed no rights as a matter of law which it could relinquish since the contract between Navistar and the debtor expired by its own terms.

*Id.* at 677–78.

In its first argument, Chrysler asserts that termination of a franchise agreement can never be a "transfer" because a termination transforms or eliminates the rights to a franchise. The Court, however, disagrees with this narrow version of "transfer", which Congress intended to be as broad as possible. *See*, H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6271. Given this definition, the termination of a franchise agreement can be found to constitute a transfer within the meaning of §§ 101(58) [54] and 548 of the Bankruptcy Code. *See, In re Metro Water and Coffee Services, Inc. f/k/a Metro Food & Vending Service, Inc.*, 157 B.R. 742, 745 (Bankr.W.D.N.Y.1993) (finding that based on broad definition and congressional intent, termination of concession contract must be found to constitute a transfer). Therefore, looking at the transaction terminating the McKee Motors Chrysler–Plymouth franchise as a whole, including the granting of a new franchise to Quality, this Court cannot hold that as a matter of law the Termination was not a transfer. The court in *Metro Water and Coffee*, however, held that even though a pre-petition termination of an executory contract is technically a transfer, the termination could not be avoided because there was no proof of collusion between any of the parties designed to bring about a financial benefit to someone to the prejudice of the debtor's estate or its creditors. The court stated,

> such a prepetition, ordinary course of commercial business, non-collusive termination of an executory contract in accordance with the terms of the contract by reason of a Debtor's material defaults is, as a matter of law, not a transaction or transfer which is actually or constructively fraudulent within the meaning, intent and underlying policy of these fraudulent conveyance laws.

*Id.* at 746.

Unlike the *Jermoo's, Coast Cities* and *Metro Water and Coffee* cases, fact issues are

presented as to whether when viewed as a whole, the transaction terminating the franchise effected a fraudulent transfer from McKee to Quality via a termination of the McKee franchise and the creation of the Quality franchise. Therefore, this Court cannot rule that, as a matter of law, no transfer occurred when the transaction was not the type of usual course of business termination for default.

Alternatively, Chrysler asserts that even if a transfer of a franchise right is possible, it could not have occurred here because McKee had no rights to transfer because Chrysler had the right to terminate the franchise without notice. In other words, says Chrysler, the franchise had expired by its own terms. The parties, however, dispute whether McKee was in default under the franchise agreement. McKee maintains that it was not in default under the franchise agreement, while Chrysler argues that McKee defaulted under paragraph 28(c) when he closed the dealership. Because serious factual disputes exist, the Court cannot grant summary judgment on this issue.

IT IS ORDERED, that the cross motions for summary judgment filed by Chrysler Corporation, Quality Jeep Eagle, Inc. and McKee Motors are denied.