In re THE CASSANDRA GROUP, Debtor.

Robert L. Geltzer, as Chapter 7 Trustee of the Cassandra Group, Plaintiff,

v.

Guy D'Antona, Defendant.

Bankruptcy No. 00–41807BRL.
Adversary No. 02–2693.

United States Bankruptcy Court, S.D. New York.

July 26, 2004.

Bryan Cave LLP, by Robert A. Wolf, Mark S. Lichtenstein, Thomas J. Schell, New York City, for Plaintiff.

Itkowitz & Harwood, by Jay B. Itkowitz, Donald A. Harwood, Craig M. Notte, New York City, for Defendant.

### MEMORANDUM DECISION AND ORDER

BURTON R. LIFLAND, Bankruptcy Judge.

Robert L. Geltzer, as chapter 7 trustee (the "Trustee") of the debtor the Cassandra Group ("Cassandra" or the "Debtor"), moves for summary judgment on his complaint (the "Complaint") against Guy D'Antona ("D'Antona") seeking to avoid certain transfers from the Debtor pursuant to, inter alia, section 544(b) of title 11, United States Code (the "Bankruptcy Code"). More specifically, the Complaint asserts three causes of action: Counts 1 and 2 charge D'Antona with actual and constructive fraudulent transfers under the Bank-

ruptcy Code and sections 272–76 of New York Debtor and Creditor Law; Count 3 charges D'Antona with unjust enrichment.

D'Antona cross-moves for partial summary judgment asserting that as a fully disclosed agent of a fully disclosed principal, acting under a broad power of attorney, he was a mere conduit and not a transferee from whom a transfer may be recovered, as set forth in section 550(a) of the Bankruptcy Code. D'Antona also contends that material issues of fact exist as to whether or not Cassandra received fair consideration for the transfers at issue and, therefore, the Trustee's motion for summary judgment should be denied. The Trustee argues, however, that D'Antona is an initial transferee because D'Antona had dominion and control over the Payments pursuant to a power of attorney (the "Power of Attorney"), under which the Trustee asserts that D'Antona had almost unlimited powers to act for Kantar.

## Background

The Cassandra Group was an investment advisory services company. Cassandra's sole shareholder and principal was Dana Giacchetto ("Giacchetto"). On February 7, 2001, the United States District Court for the Southern District of New York (the "District Court") found Giacchetto guilty of fraud and misappropriating funds and assets belonging to clients of Cassandra and sentenced him to serve 57 months in a federal prison. On April 3, 2000, pursuant to an order entered in a civil enforcement proceeding by the Securities and Exchange Commission against Giacchetto and Cassandra in the District Court,[1] a temporary receiver (the "Receiver") was appointed. On July 21, 2000 (the "Petition Date"), the Receiver filed, on behalf of Cassandra, a voluntary petition for relief under chapter 7 the Bankruptcy Code and the Trustee was appointed.

On March 1, 1997, Kantar Investments ("Kantar"), a Panamanian entity, as Overtenant, sublet to Giacchetto (the "Sublease"), as Undertenant, a 3,200 square foot residential penthouse apartment (the "Penthouse") in a cooperative corporation apartment building (the "Co-op").[2] On January 12, 1998, Kantar entered into a renewal of the Sublease with Giacchetto and Robin Renzi ("Renzi"), who provided an "Artist Certification" and thereby fulfilled the Co-op's requirement that the Penthouse serve as a "joint living/work artist's quarters." Cassandra, the Debtor, was neither a party nor a signatory of the Sublease. Nor was Cassandra a guarantor of Giacchetto's or Renzi's obligations as subtenants under the Sublease.

D'Antona executed the Sublease and subsequent renewals with Giacchetto as Kantar's disclosed agent and attorney-in-fact, pursuant to the Power of Attorney. The Power of Attorney granted D'Antona the right to manage the Penthouse on behalf of Kantar including accepting and depositing rent payments, as well as to pay expenses—including his own legal fees.

Sometime in January 1999, the Co-op voted unanimously to withdraw consent from further extending the Sublease for the Penthouse beyond February 28, 1999. Then, on March 18, 1999, Kantar brought a holdover proceeding (the "Holdover/Eviction Proceeding") in the Civil Court of the City of New York seeking to evict Giacchetto and Renzi from the Penthouse and to recover the fair market value of Giacchetto's and Renzi's continued occupancy, as well as attorney's fees. Cassandra *was not* named in the Holdover/Eviction Proceeding. Giacchetto and

---

1. *SEC v. Giacchetto*, 2000 WL 943524, 2000 U.S. Dist. LEXIS 9453 (S.D.N.Y.2000).

2. Cassandra's offices were located on a different floor of the same building.

Renzi remained in the Penthouse rent-free until December 2000, when they were finally evicted.

On July 21, 2002, the Trustee commenced this adversary proceeding against D'Antona, to recover twenty payments made by Cassandra, aggregating $135,000 (the "Payments"), to satisfy Giacchetto and Renzi's rent obligations under the Sublease. The first payment was a check made out to "Gaetano D'Antona, Esquire for Kantar Inv." However, subsequent checks were made out simply to "Gaetano G. D'Antona." Each of the checks was deposited in D'Antona's attorney-client IOLA fiduciary account, Bank of New York account No. 6701266380.

The Trustee contends that the Penthouse was a residential apartment rented by Giacchetto and Renzi. D'Antona, however, alleges that Cassandra regularly used the apartment for business purposes, including "business meetings, receiving and entertaining high-profile clients, events and overnight stays of clients and high-level Cassandra principals and/or employees." Because Giacchetto conducted a service business based largely on personal relations with celebrities, there is, as set forth below, an unresolved issue as to whether or not the Debtor received any fair consideration for the use of the Penthouse. Furthermore, it bears noting that Cassandra maintained separate office space in the same building.[3]

**Discussion**

Rule 56(c) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to bankruptcy proceedings by rule 7056 of the Federal Rules of Bankruptcy Procedures, provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affi-

davits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir.1994). Summary judgment is appropriate if, in light of the evidence presented, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Certain Funds on Deposit in Scudder Tax Free Inv. Account No. 2505103*, 998 F.2d 129, 131 (2d Cir.1993). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

**_D'Antona is not an Initial Transferee_**

Section 544(b) of the Bankruptcy Code enables the trustee, as the representative of creditors, to avoid any transfers of property that are voidable under state law by a creditor who has an allowable unsecured claim. 11 U.S.C § 544. Under section 550(a) of the Bankruptcy Code, a trustee may recover from an initial transferee the property whose transfer was successfully avoided pursuant to section 544(b), or al-

---

**3.** *See supra* note 2.

ternatively if the court so orders, the value of such property. 11 U.S.C. § 550(a).

Section 550(a) of the Bankruptcy Code permits the trustee to recover from: (a) the initial transferee; (b) the party for whose benefit the initial transfer was made; and/or (c) a subsequent transferee.[4] The Bankruptcy Code, however, does not define either "initial transferee" or the type of benefit that will suffice to make someone a transferee. Thus, a problem arises when the first recipient of the transfer is not the intended beneficiary, but rather, someone entrusted to receive payment on behalf of the intended beneficiary. To resolve this problem, the Second Circuit has adopted the "dominion and control" test set forth by the Seventh Circuit in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.1988). *Christy v. Alexander & Alexander (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 58 (2d Cir.1997).

■ Under the "dominion and control" test, "the minimum requirement of status as a transferee is dominion over the money or other asset, the right to put the money to one's own purposes." *Bonded Financial Services Inc.*, 838 F.2d at 890. In order to incur liability as an initial transferee, a party must have exercised dominion and control over the property transferred. *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson*

*& Casey*, 130 F.3d at 57. Where an entity does not deal directly with the debtor but acts only as an innocent conduit of funds in a commercial transaction, that party should not be characterized as an initial transferee within the meaning of section 550. *Lowry v. Security Pacific Business Credit, Inc. (In re Columbia Data Products, Inc.)*, 892 F.2d 26, 28 (4th Cir.1989); *In re Karl Moskowitz*, 85 B.R. 8, 11 (E.D.N.Y.1988); *see also Hooker Atlanta Corp. v. Hocker*, 155 B.R. 332 (Bankr. S.D.N.Y.1993) (Initial transferee is one who is legally able to use the money for his/her own purposes.).

■ The Trustee asserts that because invoices for D'Antona's services, totaling $33,108.24, were satisfied by Kantar at D'Antona's direction from the attorney-client IOLA fiduciary account, D'Antona exhibited the requisite dominion and control necessary for the Court to find him an initial transferee. I disagree. The payment of invoices for legal services rendered by D'Antona is not dissimilar to the payment of other expenses, such as maintenance fees of the Penthouse, for which D'Antona, as Kantar's agent and attorney-in-fact, was empowered to effect on Kantar's behalf. D'Antona was at all times a fully disclosed agent of his fully disclosed principal, Kantar. D'Antona was not a party to the Sublease, and the Trustee does not allege that D'Antona had any beneficiary or ownership interest in Kantar. Furthermore, all of the Payments

4. Section 550 provides, in pertinent part, as follows:
(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
  (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

  (2) any immediate or mediate transferee of such initial transferee.
(b) The trustee may not recover under section (a)(2) of this section from—
  (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
  (2) any immediate or mediate good faith transferee of such transferee.

were deposited into D'Antona's attorney-client IOLA fiduciary account for the benefit of Kantar. Although the Power of Attorney gave D'Antona broad powers to act on Kantar's behalf, D'Antona never had a legal right to put the Payments to his own personal use and therefore, never had sufficient dominion and control over the Payments to establish D'Antona as anything but a mere conduit.

Notwithstanding the holding as to transferee status, the Trustee made a substantial and prima facie fraudulent conveyance case against the disclosed principal Kantar and, as is set forth hereinafter, will be authorized to amend his pleading.

*Material Issues of Fact Exist as to Whether Cassandra Received Fair Consideration From the Transferee*[5]

■ Every conveyance made and every obligation incurred with actual intent to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors. To prevail on a claim under section 276 of New York Debtor and Creditor Law, the Trustee must establish that the transfer was done with actual intent to defraud. *Kittay v. Flutie N.Y. Corp. (In re Flutie N.Y. Corp.)*, 310 B.R. 31, 58 (Bankr.S.D.N.Y. 2004) (citing *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 243 (Bankr.S.D.N.Y. 2000)). Actual intent is difficult to establish through direct evidence and therefore, the relevant intent may be inferred from the facts and circumstances surrounding the transfer. *Cadle Co. v. Newhouse*, 2002 WL 1888716, at *6 (S.D.N.Y. Aug. 16, 2002) (citing *U.S. v. Carlin*, 948 F.Supp.

271, 277 (S.D.N.Y 1996)). Such facts and circumstances, otherwise known as "badges of fraud", include transfers made without adequate consideration. *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir.1983). Likewise, to establish a claim for constructive fraud pursuant to sections 273–75 of New York Debtor and Creditor Law, the Trustee must also prove that the transfers were made without fair consideration.[6]

■ The Trustee asserts that the Payments by Cassandra to satisfy Giacchetto and Renzi's rental obligation lack adequate consideration. Section 272 of New York Debtor and Creditor Law states that fair consideration exists: (1) when in exchange for such property, or obligation, as a fair equivalent therefore, and in good faith, the property is conveyed or an antecedent debt is satisfied or; (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained. NEW YORK DEBTOR AND CREDITOR LAW § 272 (McKinney 2001). The courts have long recognized that "transfers made to benefit third parties are clearly not made for a fair consideration," and, similarly, that "a conveyance by a corporation for the benefit of an affiliate [should not] be regarded as given for fair consideration as to the creditors of the conveying corporations." *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991 (2d Cir.1981). Thus, the issue is whether the benefit, if any,

---

**5.** At argument it was conceded that the issue of fair consideration rested upon the same set of facts as the issue of whether or not D'Antona was an initial transferee. In the interest of efficiency, it is appropriate to parse out those issues at this time.

**6.** In addition the transfers must have either rendered Cassandra insolvent, or left Cassandra with insufficient property to pay its probable liabilities on existing debts as they became mature. *Fromer v. Yogel*, 50 F.Supp.2d 227, 246 (S.D.N.Y.1999). D'Antona does not dispute the issue of Cassandra's insolvency during the relevant period.

that Cassandra (as opposed to Giacchetto and Renzi) received from the Penthouse adequately constituted fair consideration.

■ To be adequate, the consideration given must have conferred an economic benefit upon Cassandra, provided the value of the benefit "approximates the value of the property or obligation" transferred by Cassandra. *Musso v. Herman (In re Tesmetges),* 85 B.R. 683, 697 (Bankr. E.D.N.Y.1988); *Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d at 992.

The Trustee argues that Cassandra's payments to D'Antona do not constitute fair consideration because Giacchetto and Renzi received the benefit of the Penthouse—not Cassandra. Indeed, under the terms of the Sublease, the Penthouse was a residential apartment and was not intended for commercial or business purposes. In addition, Giacchetto and Renzi, not Cassandra, were the only signatories to the Sublease and subsequent renewals and were the only parties named in the Holdover/Eviction Proceeding despite continuous receipt of rent payments from Cassandra.

In response, and with a degree of inconsistency, D'Antona asserts that Cassandra received fair consideration for the transfers because Cassandra "regularly and openly" used the Penthouse to carry on its corporate and business activities. A former vice president of Cassandra states that on multiple occasions, Cassandra used the Penthouse for client parties, as well as to provide housing for out of town clients. In addition, D'Antona points to a New Year's Eve party, attended by Cassandra

employees and clients as support for his claim that Cassandra received some benefit from the Penthouse.

■ Fairness of consideration is ordinarily a question of fact to be determined under the circumstances of the particular case. *Klein v. Tabatchnick,* 610 F.2d 1043, 1047 (2d Cir.1979); *Lippe v. Bairnco Corp.,* 249 F.Supp.2d 357, 377 (S.D.N.Y. 2003). Here, both sides have presented adequate evidence to create factual issues regarding whether Cassandra received sufficient benefit from the Penthouse to constitute fair consideration and therefore, the Trustee's motion for summary judgment is denied. Should the Trustee amend the Complaint and name Kantar as a defendant in this action, the issue of whether there was fair consideration would still exist.

## Conclusion

For the reasons set forth above, D'Antona's motion for partial summary judgment on the initial transferee/mere conduit issue is granted. The Trustee's motion for summary judgment is denied. However, as the Complaint sufficiently pleads causes of action for fraudulent conveyances by an initial transferee, the Trustee is authorized to amend and name Kantor as a defendant.[7]

THE TRUSTEE IS DIRECTED TO SUBMIT AN ORDER CONSISTENT WITH THIS DECISION.

---

7. Treating the Trustee's position and argument on the motion for summary judgment coupled with the reply papers, the Court is constrained to consider them as an application for leave to replead or amend the Complaint to name Kantar as a defendant. *See* Fed R. Civ. P. 15, 19; *VKK Corp. v. Nat'l Football League,* 244 F.3d 114, 128 (2d Cir. 2001)(where both complaints are premised upon same facts and conduct, additional defendant was mistakenly omitted from original complaint and the additional defendant is not prejudiced by the delay, the amended complaint may "relate back" to a timely filed complaint and escape the statute of limitations).