**In re ROBOTIC VISION SYSTEMS, INC. and Auto Image ID, Inc., Debtors.**

Nos. 04–14151–JMD, 04–14152–JMD.

United States Bankruptcy Court, D. New Hampshire.

March 4, 2005.

Norman M. Kinel, Esquire, Ira S. Sacks, Esquire, Dreier, LLP, New York, NY, Bruce Harwood, Esquire, Sheehan, Phinney, Bass + Green, Manchester, NH, for the Debtors.

Randall L. Klein, Esquire, Dimitri G. Karcazes, Esquire, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, Joseph A. Foster, Esquire, McLane, Graf, Raulerson & Middleton, P.A., Manchester, NH, for the RVSI Investors, LLC.

Charles R. Bennett, Jr., Esquire, Daniel J. Lyne, Esquire, Hanify & King, Boston, MA, for GSI Lumonics, Inc.

Robert A. White, Esquire, Murtha Cullina LLP, Hartford, CT, for the Unsecured Creditors Committee.

### *MEMORANDUM OPINION*

J. MICHAEL DEASY, Bankruptcy Judge.

## I. INTRODUCTION

On March 1, 2005, the Court held a hearing on the Motion For Determination of Bona Fide Dispute (Doc. No. 629) (the "Motion"), filed by RVSI Investors, L.L.C. (the "Lender"), requesting this Court to determine that a bona fide dispute exists over the interests in property of the bankruptcy estate within the meaning of 11 U.S.C. § 363(f), which would allow the Court to authorize the sale of an operating division (the "SEG Division") of Robotic Vision Systems, Inc. (the "Debtor") free and clear of the claims and interests of GSI Lumonics, Inc. ("GSIL"). · The Official Committee of Unsecured Creditors (the "Committee") supported the Motion and filed a motion to join the Motion (Doc. No. 721) (the "Joinder Motion"), which was

granted.[1]

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

The Debtor and GSIL have been involved in a long-standing dispute regarding the use of and rights in and ownership of certain patented technology and other intellectual property described in a 1998 Settlement Agreement dated June 12, 1998 (hereinafter "the 1998 Settlement Agreement"), by and between the parties (hereinafter "the Disputed Technology"). On November 11, 2004, the date of the filing of the Debtor's chapter 11 bankruptcy petition (the "Petition Date"), the dispute between the Debtor and GSIL was the subject of a proceeding pending in the United States District Court for the Eastern District of New York (the "District Court Action"). Prior to the Petition Date, a preliminary injunction was issued in the District Court Action prohibiting the Debtor from disclosing, selling or transferring any Disputed Technology.[2]

At the beginning of this bankruptcy proceeding, the Debtor was experiencing substantial cash-flow difficulties and required the use of the Lender's cash collateral in order to operate its business. In order to obtain the Lender's agreement to use cash collateral, the Debtor agreed to sell its SEG Division on an expedited basis. The Debtor had been marketing the SEG Division for several years prior to the Petition Date without success. Pursuant to an auction procedure approved by the Court, the Debtor marketed the SEG Division and conducted an auction among qualified bidders on February 28, 2005. The following day the Court held a hearing on the Debtor's Motion to Sell the SEG Division free and clear of all interests pursuant to 11 U.S.C. § 363 (Doc. No. 557) (the "Sale Motion").

GSIL filed an objection to the Sale Motion contending that a portion of the assets the Debtor proposed to sell with the SEG Division included the Disputed Technology that was the subject of the preliminary injunction in the District Court Action. At the hearing on the Sale Motion, the Debtor amended its motion to request authorization to sell the SEG Division with a specific exclusion for any Disputed Technology and added a condition precedent to the buyer's obligation to close on the purchase. The condition precedent was that the buyer receive either a release of any claim by GSIL or satisfaction that the SEG Division sale did not involve the Disputed Technology. After the amendment to the Sale Motion, GSIL withdrew its objection to the sale of the SEG Division and the Court approved the sale. Following approval of the amended Sale Motion, the Court heard arguments on the Motion and took the matter under advisement.

For the reasons set forth in this opinion, the Court shall deny the Motion.

1. The Committee and the Lender shall be collectively referred to as the "Movant" and the Motion and the Joinder Motion shall be collectively referred to as the "Motion."

2. *GSI Lumonics, Inc. v. Robotic Vision Sys., Inc.*, No. 03–CV–4474 (D.N.Y. January 27, 2004)(Order adopting Report and Recommendation of the Magistrate Judge issued on October 17, 2003).

## III. DISCUSSION

### A. Standard for Determination of a Bona Fide Dispute

A bona fide dispute exists when there is an objective basis for either factual or legal dispute as to the validity of an interest in property. *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr.N.D.Ill. 1991). The Court need not determine the outcome of the dispute, just whether one exists. *Id.* at 590. The purpose behind § 363(f)(4) is to allow the sale of property of the estate free and clear of disputed interests so the liquidation of the assets are not unnecessarily delayed while the disputes are being litigated. *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 171 (9th Cir. BAP 2001).

The reported cases reveal a wide range of evidentiary requirements that must be met before a court may make a determination that a bona fide dispute exists. *Union Planters Bank v. Burns (In re Gaylord Grain L.L.C.)*, 306 B.R. 624, 627 (8th Cir. BAP 2004) (evidence must be provided to show factual grounds that there is an objective basis for a dispute); *In re Octagon Roofing*, 123 B.R. at 590 (mere allegation of bona fide dispute without evidence is not sufficient); *In re Oneida Lake Dev.*, 114 B.R. 352, 357 (Bankr. N.D.N.Y.1990) (where a sale needed to be concluded before an evidentiary hearing could be conducted, allegations in an objection to sale were sufficient to raise a bona fide dispute over the avoidability of a lien). It appears the evidentiary record required to support a finding of a bona fide dispute for purposes of § 363(f) depends upon a case-by-case consideration of: (i) the procedural posture of the case, (ii) the need to expedite the sale, and (iii) the nature of the basis for determining that a dispute exists. At a minimum, a party must articulate in a pleading or in an argument an objective basis sufficient under the facts and circumstances of the case for the court to determine that a bona fide dispute exists. In this case, if the Court finds that if the allegations contained in the complaint filed by the Lender in adversary proceeding 05–1023–JMD, the Motion, the Joinder Motion, or the arguments by the Movant at the hearing are sufficient to state a disputed claim for which relief may be granted, then it is sufficient to create a bona fide dispute at this point in this case.

### B. Arguments of the Parties

The Lender asserts a bona fide dispute exists as to the ownership of the Disputed Technology. In a complaint filed with the Court,[3] the Lender alleges the 1998 Settlement Agreement between the Debtor and GSIL was not a license but, in fact, an assignment and security agreement between the parties; and that GSIL retained rights in the Disputed Technology to secure the repayment of the Note and, as such, the Debtor is the true owner of the Disputed Technology. The Lender contends the filing of its complaint disputing the actual ownership of the technology is sufficient to raise the issue of a bona fide dispute as defined by Section 363(f)(4). The Committee adopts the Lender's theory of the nature of the 1998 Settlement Agreement and contends the Debtor or the Committee has grounds to recover the Disputed Technology from GSIL under one or more of the avoidance actions available under the Bankruptcy Code.

GSIL did not directly object to the Motion. However, in its objection to the Sale Motion, GSIL asserted that characterization of the 1998 Settlement Agreement is not relevant because the 1998 Settlement Agreement, be it a license or assignment,

---

3. *See RVSI Investors, L.L.C. v. GSI Lumonics, Inc.* Adv. Pro. No. 05–1023–JMD.

was validly terminated as of March 28, 2003, and the Debtor admitted in the District Court Action that it had returned all the Disputed Technology to GSIL prepetition. According to GSIL, the dispute between the parties is not over any interest in property but rather whether the Debtor continues to use the Disputed Technology, notwithstanding Debtor's assertions to the contrary. GSIL contends that a dispute as to ownership is not a bona fide dispute within the meaning of Section 363(f). In addition, GSIL contends that any sale of the Disputed Technology is not permitted because it would violate the preliminary injunction issued in the District Court Action.[4] Finally, GSIL claims the Lender is estopped from re-characterizing the 1998 Settlement Agreement because the Debtor failed to raise that argument in the District Court Action. GSIL requests that the Court prohibit the sale of any Disputed Technology as part of the sale of the SEG Division or, in the alternative, to hold the proceeds of the sale in escrow pending final determination of the extent of GSIL's interest in the assets of the SEG Division.

### C. Basis for Factual or Legal Disputes

#### 1. Characterization of the 1998 Settlement Agreement

■ In its complaint, the Lender asserts that the 1998 Settlement Agreement between the parties is a "disguised security agreement" and not a license. Upon review of the terms of the agreement, the Court finds the economic realities of the terms between the parties could be con-

strued as an assignment rather than a license. *See Microsoft Corp. v. DAK Indus., Inc.,* 66 F.3d 1091, 1095 (9th Cir. 1995) (economic realty compelled a finding that the agreement was a lump-sum sale of software, not a license to use software). The Lender alleges sufficient facts to state a claim for which relief can be granted. Therefore, the Lender's allegations state an objective basis for the Court to find that a bona fide dispute exists over the legal characterization of the 1998 Settlement Agreement.

#### 2. Status of 1998 Settlement Agreement on the Petition Date

■ The next step in the Court's analysis is to determine the status of the Debtor's interests pursuant to the 1998 Settlement Agreement on the Petition Date. Notwithstanding any characterization of the relationship between the parties created by the agreement, it is undisputed that the 1998 Settlement Agreement was terminated prior to the Petition Date. Magistrate Judge Steven Gold for the Eastern District of New York found that, according to the terms of the 1998 Settlement Agreement, GSIL was entitled to terminate that agreement due to the Debtor's material default under is terms.[5] Further, in its argument in the District Court Action, the Debtor represented to the court that as of March 28, 2003, it voluntarily terminated its rights under the agreement with GSIL and returned all formerly licensed technology acquired from GSIL under the 1998

---

4. The Court notes that, in the Motion, the Lender has requested this Court to enter an order allowing the Debtor to sell assets free and clear of any claim of GSIL subject to appropriate modification of the injunction order issued by the District Court Action.

5. "It is undisputed that defendant RVSI defaulted on the terms of its promissory note, and that [GSIL] provided RVSI with notice of termination. It therefore seems clear that [GSIL] is entitled to revoke its license pursuant to the agreement's explicit terms." Report and Recommendation of Mag. dated October 17, 2003, p. 3–4

Settlement Agreement.[6]

Based upon the Debtor's admissions in the District Court Action, this Court finds that the Debtor terminated the 1998 Settlement Agreement, and the Debtor voluntarily surrendered its rights and interests in the Disputed Technology no earlier than March 28, 2003, and no later than the date of the Report & Recommendation, October 17, 2003. Either way, any rights the Debtor may have had in the Disputed Technology, be they pursuant to a license or an assignment, were terminated prior to the Petition Date. Therefore, on the Petition Date, the Debtor had no interest in the Disputed Technology.

█ Notwithstanding Movant's argument to the contrary, the Court finds termination of the 1998 Settlement Agreement is relevant to the analysis. The threshold determination as to the existence of a bona fide dispute necessarily requires a finding that the disputed property is or could become property of the bankruptcy estate. *In re Rodeo Canon Dev. Corp.*, 362 F.3d 603, 608 (9th Cir.2004); *Moldo*, 266 B.R. at 172. Construing the facts in the light most favorable to the Movant, even if the Court finds the 1998 Settlement Agreement was an assignment and not a license, the Debtor has admitted in a prior federal court proceeding that its rights under that agreement were terminated or voluntarily surrendered prior to the Petition Date. Consequently, on the Petition Date, the Disputed Technology was not property of the estate. Thus, there can be no bona fide dispute as to the Debtor's interest in the Disputed Technology unless the Movant states an objective basis under which the bankruptcy estate may recover the Disputed Technology for the benefit of the estate.

### 3. Did a Transfer Occur?

█ Under Chapter 5 of the Bankruptcy Code, certain transfers of interests in property may be avoided and recovered for the benefit of the bankruptcy estate. The Bankruptcy Code defines the term "transfer" broadly. Under the Bankruptcy Code, a transfer means, "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54). Congress intended the term transfer to be as broad as possible. *Lloyd McKee Motors, Inc. v. Chrysler Corp. (In re Lloyd McKee Motors)*, 166 B.R. 725, 728 (Bkrtcy.D.N.M.1993) (citing legislative history). Under the statutory definition of the term, the voluntary surrender of the Disputed Technology that was used and useful in the operation of the Debtor's SEG Division (according to the Objection filed by GSIL) was a transfer under the Bankruptcy Code. *Id.* (prepetition surrender of rights under a franchise agreement after debtor's default was a transfer); *In re Metro Water and Coffee Serv. Inc.*, 157 B.R. 742, 746 (Bankr. W.D.N.Y.1993) (prepetition termination of concession agreement on account of debtor's material default was a transfer); *Fitzgerald v. Cheverie (In re Edward Harvey Co.)*, 68 B.R. 851, 858 (Bkrtcy.D.Mass. 1987) (prepetition surrender of a leasehold interest in commercial real estate was a transfer); *In re Fashion World, Inc.*, 44 B.R. 754, 756 (Bkrtcy.D.Mass.1984) (prepetition grant to lessor of right to terminate a commercial lease was a transfer even though lease was never terminated).

---

**6.** *See GSI Lumonics, Inc. v. Robotic Vision Sys., Inc.*, No. 03–CV–4474 (D.N.Y. January 27, 2004).

#### 4. Recovery Under Chapter 5

■ There are three provisions of the Bankruptcy Code under which the transfer of the Disputed Technology may be recovered for the benefit of the estate. 11 U.S.C. §§ 544, 547, 548. To recovery property of the estate under sections 547 and 548, the transfer must occur within one year of the Petition Date. In this case, the latest the transfer could have occurred would have been October 17, 2003, more than one year before the Petition Date. Accordingly, the Debtor's interests in the Disputed Technology cannot be recovered as a fraudulent transfer under 11 U.S.C. § 548 or as a preferential transfer under 11 U.S.C. § 547. However, the Debtor's interests could be recovered under 11 U.S.C. § 544 as a fraudulent transfer under applicable state fraudulent transfer laws.[7]

■ In order to obtain relief under state fraudulent transfer law, the Movant must allege and establish either actual[8] or constructive fraud.[9] *Cf. Dahar v. Jackson, (In re Jackson),* 318 B.R. 5, 11–12 (Bkrtcy.D.N.H.2004)(discussing the components of actual and constructive fraud under UFTA). The Court does not find the Movant alleged actual fraud. The necessary predicate to establishing constructive fraud is proving the Debtor received less than fair consideration for the transfer. N.Y. Debt. & Cred. Law § 272; *Geltzer v. D'Antona (In re The Cassandra Group),* 312 B.R. 491, 497–98 (Bankr. S.D.N.Y.2004). The Court does not find the Movant has alleged that the Debtor's voluntary transfer of rights upon its default under the terms of the 1998 Settlement Agreement was for less than fair consideration. Accordingly, the Court finds the Movant has not established an objective basis for a factual or legal dispute for recovery of the Debtor's rights in the Disputed Technology under 11 U.S.C. § 544.

### IV. CONCLUSION

For the reasons set forth in this opinion, the Court finds that the Movant has failed to establish an objective basis for a factual or legal argument establishing the Debtor's rights to the Disputed Technology. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order denying the Motion.

---

7. The choice of law provision of the 1998 Settlement Agreement states that disputes shall be determined pursuant to New York state law. New York state has adopted the Uniform Fraudulent Conveyance Act. N.Y. Debt. & Cred. § 270 et. seq.

8. N.Y. Debt. & Cred. § 276.

9. N.Y. Debt. & Cred. §§ 273–75.