In re EBC I, INC., f/k/a eToys, Inc., Reorganized Debtor.

EBC I, Inc., f/k/a eToys, Inc., Plaintiff,

v.

America Online, Inc., Defendant.

Bankruptcy No. 01–00706 (MFW). Adversary No. 03–50003.

United States Bankruptcy Court, D. Delaware.

Dec. 7, 2006.

632

Derek C. Abbott, Michael G. Busenkell, Robert J. Dehney, Jason W. Staib, Gregory W. Werkheiser, Thomas W. Briggs, Morris, Nichols, Arsht & Tunnell, Laurie

S. Polleck, Frederick B. Rosner, Jaspan Schlesinger Hoffman LLP, Wilmington, DE, Matt Neiderman, Whitney & Bogris, LLP, Greenville, DE, Jason W. Harbour, Hunton & Williams, Richmond, VA, for Debtor.

Christina Maycen Thompson, Gwendolyn M. Lacy, Karen C. Bifferato, Marc J. Phillips, Connolly Bove Lodge & Hutz LLP, Wilmington, DE, for defendant.

## OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is a Motion for Partial Summary Judgment filed by EBC I, Inc., f/k/a eToys, Inc. (the "Debtor") and a Motion for Summary Judgment filed by America Online, Inc. ("AOL"). For the reasons set forth below, the Court will grant, in part only, AOL's Motion for Summary Judgment and dismiss Counts IV and V of the Complaint. The Court will also grant, in part, the Debtor's Motion for Partial Summary Judgment on Count I.

## I. BACKGROUND

On March 7, 2001, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. On that same day, the Debtor ceased operations and shut down its website. All the Debtor's assets were subsequently liquidated.

Prior to the bankruptcy filing, the Debtor and AOL had executed a contract dated August 10, 1999 (the "Contract"), under which AOL committed to provide online advertisements and other services for the Debtor for three years for $18 million, payable in installments. The Debtor paid $7.5 million through July 2000 in accordance with the Contract, but AOL failed to perform its obligations, providing less than $2.4 million in advertisements. As a result, the Contract was modified on November 15, 2000. The Debtor paid an additional $750,000 at that time and AOL agreed to provide a lesser amount of advertisements (worth approximately $6 million) for the following two years without further payments by the Debtor.

On February 26, 2001, the Debtor issued a press release announcing its financial difficulties and intent to file bankruptcy. Two days later, AOL terminated the Contract pursuant to section 5.6 which allowed termination if the Debtor became insolvent or filed bankruptcy.

On January 3, 2003, the Debtor filed an adversary complaint against AOL seeking (1) to avoid and recover alleged fraudulent transfers pursuant to sections 548 and 544 of the Bankruptcy Code, (2) damages for breach of contract, and (3) equitable relief based on unjust enrichment. According to the Debtor, the payments made under the Contract, the amendment of the Contract, and the termination of the Contract by AOL were all avoidable transfers of property of the Debtor.

AOL filed a motion to dismiss the complaint. At oral argument held on April 30, 2003, the Court granted the motion to dismiss with respect to the unjust enrichment count because the parties conceded that their relationship was governed by the Contract.

On May 14, 2004, the Debtor filed a motion for partial summary judgment, and AOL filed a motion for summary judgment on all counts. The Debtor conceded in its response to AOL's motion for summary judgment that its breach of contract claim and any claim for recovery of payments made under the Contract prior to its

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

amendment on November 15, 2000, should be dismissed.

The motions for summary judgment as they relate to the remainder of the Debtor's claims were taken under advisement. Briefing is complete, and the matter is ripe for decision.

## II.  *JURISDICTION*

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) & 157(b)(2)(A), (E), (H) & (O).

## III.  *DISCUSSION*

### A.  *Standard for Summary Judgment*

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In deciding a motion for summary judgment, the judge's function is ... to determine if there is a genuine issue for trial."  *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637 (3d Cir.1993).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Huang v. BP Amoco Corp.,* 271 F.3d 560, 564 (3d Cir.2001) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  Once the moving party establishes the absence of a genuine issue of material fact, however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted).  A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine issue of material fact for trial.  Fed.R.Civ.P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial").  *See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982); *Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141, 1146 (3d Cir.1972).

In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Issues of material fact are those "that might affect the outcome of the suit under the governing law."  *Id.* at 248, 106 S.Ct. 2505.  An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result.  *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

### B.  *Fraudulent Transfer under Section 548(a)(1)(B)*

The version of section 548(a)(1) applicable to this case [2] provides that:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

---

**2.** Section 548 was modified by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which became effective October 17, 2005, after the instant adversary proceeding was commenced.

. . .

■ (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. . . .

11 U.S.C. § 548(a)(1)(B) (2004) (amended 2005). To recover under section 548, therefore, the Debtor must show that while it was insolvent there was a transfer of an interest in its property for less than reasonably equivalent value.

### 1. *Insolvency*

■ The term insolvent is defined in the Bankruptcy Code generally to mean a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation." 11 U.S.C. § 101(32)(A).

AOL contends in its Motion for Summary Judgment that the Debtor was solvent at the time of the transfers which the Debtor seeks to avoid. Therefore, AOL asserts that a crucial element of the Debtor's case is missing and summary judgment in its favor should be granted. Specifically, AOL contends that the Debtor was solvent until early December 2000 when it finally exhausted the funds it had raised in its initial public offering and other equity and debt financing. AOL supports this contention with the Debtor's financial records and an expert's opinion.

The Debtor apparently concedes that it was solvent when it made payments to AOL under the original Contract[3] because

it has withdrawn its claims that those payments were fraudulent transfers. The Debtor asserts, however, that when the Contract was amended (and it paid $750,000) on November 15, 2000, it was insolvent. It further contends that it remained insolvent through the date the Contract was terminated on February 28, 2001.

AOL asserts that as of November 15, 2000, the Debtor was still solvent. AOL relies on its expert's report to support this conclusion. The Debtor asserts that there are several errors with the expert's conclusion, namely its valuation of the Debtor's inventory, goodwill and intangibles. Consequently, the Court concludes that there is a genuine issue of material fact whether the Debtor was insolvent on November 15, 2000.

AOL concedes, however, that the Debtor was insolvent on February 28, 2001, when it terminated the Contract.[4] Therefore, as to the Debtor's assertion that the termination of the Contract is avoidable as a fraudulent conveyance, there is no genuine issue that the Debtor was insolvent at that time.

### 2. *Transfer of an "Interest of the Debtor in Property"*

■ In its motion for partial summary judgment, the Debtor seeks a determination that AOL's termination of the Contract, and consequently the retention of the payments made by the Debtor in advance for services never delivered, constitutes a fraudulent transfer as a matter of law under section 548. AOL disagrees, asserting that its termination was proper

---

**3.** The payments under the Contract were made in the amount of $1.5 million each on September 9, 1999, October 15, 1999, January 10, 2000, March 24, 2000, and July 13, 2000.

**4.** AOL's termination of the Contract on that date was premised on the Debtor's announcement that it was insolvent. AOL's expert opined that the Debtor became insolvent in early December 2000.

under the Contract and that no property of the Debtor was transferred as a result of the termination.

### a. Case Law

The Debtor argues that courts have consistently recognized that, even when a contract is properly terminated pursuant to its terms, the termination constitutes a fraudulent transfer if the debtor had made payments and acquired rights under the contract which are lost as a result of the termination. *See, e.g., In re McConnell,* 934 F.2d 662, 664 (5th Cir.1991) (holding that down payment on real estate sale contract was a fraudulent transfer when contract was later terminated); *In re Ferris,* 415 F.Supp. 33, 39 (W.D.Okla.1976) (holding that termination of lease constituted a transfer of property of the debtor under fraudulent transfer provisions of the former Bankruptcy Act); *In re Grady,* 202 B.R. 120, 123 (Bankr.N.D.Iowa 1996) (finding that termination of contract for sale of real estate constituted a transfer of debtor's interest in property); *In re Bockes Bros. Farms, Inc.,* Nos. 93–6127KW, 93–60881KW, 1994 WL 910792, at *4–5 (Bankr.N.D.Iowa Jan. 6, 1994) (holding that termination of land contract where debtor had paid all but the final installment, though permitted by the contract, was a fraudulent transfer of property of the debtor); *In re Veretto,* 131 B.R. 732, 736–37 (Bankr.D.N.M.1991) (holding that forfeiture of debtor's equity interest under real estate contract was a transfer for purposes of preference and fraudulent transfer claims); *In re Indri,* 126 B.R. 443, 446 (Bankr.D.N.J.1991) (concluding that termination of lease was a transfer of property of debtor for purposes of preference and fraudulent conveyance statutes); *In re Queen City Grain, Inc.,* 51 B.R. 722, 726 (Bankr.S.D.Ohio 1985) ("There is just no getting away from the fact that upon the termination of [the debtor's] lease,

there was a 'parting with . . . an interest in property,' for after the termination of the lease [the debtor] no longer had an interest in the [property].").

AOL asserts that the cases cited by the Debtor are distinguishable because they all involved contracts for the lease or sale of real estate. It counters that the termination of a services contract, such as the Contract in this case, does not result in the transfer of any "property right" of the Debtor. *See, e.g., Allan v. Archer Daniels Midland Co. (In re Commodity Merchs., Inc.),* 538 F.2d 1260, 1263 (7th Cir.1976) (holding that cancellation of contract because of debtor's breach was not a transfer of the debtor's property under the former Bankruptcy Act); *Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co. (In re Coast Cities Truck Sales, Inc.),* 147 B.R. 674, 677–78 (D.N.J.1992) (concluding that termination of contract pre-bankruptcy was not a fraudulent transfer under § 548 because executory contract rights are governed by § 365); *Edwards v. Fed. Home Loan Mortgage Corp. (In re LiTenda Mortgage Corp.),* 246 B.R. 185, 191 (Bankr.D.N.J.2000) (concluding that "prepetition termination of a contract pursuant to its terms and the consequent cessation of a debtor's rights under a contract does not constitute a transfer within the meaning of either Code § 547(b) or § 548(a)."); *Creditors' Comm. v. Jermoo's, Inc. (In re Jermoo's, Inc.),* 38 B.R. 197, 203–06 (Bankr.W.D.Wis.1984) (holding that termination of franchise-dealership contracts per their terms was not a transfer for purposes of fraudulent transfer statute).

█ The Court agrees with the Debtor that the termination of the Contract by AOL resulted in a transfer of property of the Debtor, namely the advertising services for which the Debtor had pre-paid. The Court disagrees with the conclusion of

the cases cited by AOL that section 548 is not applicable because executory contracts may be assumed or rejected under section 365. In fact, if a contract is terminated pre-petition it is no longer executory and section 365 is not applicable. *See, e.g., In re C & S Grain Co.,* 47 F.3d 233, 237 (7th Cir.1995) (concluding that because contracts were terminated pre-petition they could not be assumed under section 365); *Counties Contracting & Constr. Co. v. Constitution Life Ins. Co.,* 855 F.2d 1054, 1061 (3d Cir.1988) (concluding that "[a] contract may not be assumed under § 365 if it has already expired according to its terms.")

Further, there is no language in section 548 to suggest that executory contracts or terminated contracts are not subject to its provisions. In fact, courts have held that the termination of a contract pre-petition can constitute a transfer of property of the estate. *See, e.g., Commodity Merchs.,* 538 F.2d at 1263 (stating that if the terminated contracts had been assignable, perhaps the cancellation of them would have been an avoidable transfer); *In re Thompson,* 186 B.R. 301, 309–10 (Bankr.N.D.Ga.1995) (concluding that termination of franchise agreement or sublease might be avoidable under section 548 if the debtor had rights under the agreement that could be assigned).

The cases cited by AOL are also distinguishable because they did not involve a pre-paid contract. In those cases, the debtor had breached the contract and, consequently, was not entitled to compel performance by the other party. Therefore, in those cases, it was appropriate to determine that there was no transfer of any interest of value that the debtor had when the contract was cancelled according to its terms. *See, e.g., Commodity Merchs.,* 538 F.2d at 1262–63 (commodities trading agreements cancelled as a result of debt-

or's inability to fulfill its obligations because of its financial difficulties); *Coast Cities Truck,* 147 B.R. at 675 (contract terminated because of substantial arrears, dishonored checks, and liens placed on assets by other creditors); *LiTenda Mortgage Corp.,* 246 B.R. at 188–89 (contract terminated after audit showed that debtor was using custodial accounts for its own purposes and accounts had a shortfall in excess of $400,000); *Jermoo's, Inc.,* 38 B.R. at 198 (contract terminated after debtor had been in arrears for 18 months and had failed to replace dishonored checks).

In contrast, in this case, the Debtor had not materially breached the Contract. In fact, as a result of the amendment in November 15, 2000, the Debtor had fully paid for all services that AOL was obligated to perform for the next two years under the Contract. Therefore, the Court concludes that the cases cited by the Debtor, rather than those cited by AOL, are more germane to this case.

b. *Property or Contract Rights*

The Debtor argues that the loss of its rights under the Contract (to online advertisements) deprived it of valuable property rights. It contends that under Virginia law, contract rights are clearly property rights. *See, e.g., Worrie v. Boze,* 198 Va. 533, 95 S.E.2d 192, 196 (1956) ("It is well settled that the right to performance of a contract and the right to reap profits therefrom are property rights which are entitled to protection in the courts.")

AOL contends, however, that contract rights are not property rights under Virginia law. *See, e.g., Network Solutions, Inc. v. Umbro Int'l, Inc.,* 259 Va. 759, 529 S.E.2d 80, 86 (2000). AOL's reliance on *Network Solutions* is unfounded. The Court in that case found that future Internet services cannot be garnished because they are not a liability, rather than be-

cause there were no property rights in the contract to provide those services. *Id.* at 86. In fact, the *Network Solutions* Court expressly stated that it was not holding generally that contract rights are not property or are not garnishable. *Id.* at 87–88.

■ The Court concludes that, contrary to AOL's assertion, Virginia law does recognize contract rights as property rights. *See, e.g., In re Chaves,* 230 Va. 112, 335 S.E.2d 97, 103 (1985) (concluding that tortious interference with contract claim was "an intentional wrong to the property right of another."); *Worrie,* 95 S.E.2d at 196 (recognizing that contract rights are property rights).

AOL argues nonetheless that there is a fundamental difference between property and contract rights. It asserts that property is a tangible or intangible thing which is subject to ownership to the exclusion of others. In contrast, a contract right is just a promise of future performance which is created and circumscribed by the terms of the contract itself. Only property is recoverable as a fraudulent transfer under section 548. As a result, AOL asserts that the Debtor owned nothing under the Contract except AOL's promise to perform in accordance with the terms of the Contract. Because the Contract permitted AOL to terminate it as it did, AOL argues that the Debtor has no remaining property rights in the Contract.

■ The Debtor disagrees, arguing that AOL simply cites general case law which discusses general principles of property rights. None of the cases cited by AOL address the issue at hand, namely whether contract rights are property for purposes of section 548 of the Bankruptcy Code. Rather, the Debtor argues that the broad definition of property in section 541 of the Code encompasses contract rights as well as tangible property.

■ The Court agrees with the Debtor. Property of the estate is broadly defined by the Bankruptcy Code to include "all legal or equitable interests of the debtor in property as of the commencement of the case" and "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(1) & (7). The Code expressly excludes from property of the estate any interest in a lease that was terminated at the expiration of its term pre-petition. *Id.* § 541(b)(2). By the plain language of the Code then property of the estate includes any interest a debtor has in a lease that expired pre-petition for reasons other than the expiration of its term. This is consistent with the case law cited by the Debtor. *See, e.g., Ferris,* 415 F.Supp. at 39; *Indri,* 126 B.R. at 446; *Queen City Grain, Inc.,* 51 B.R. at 726.

■ Further, property of the estate includes any "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. I.R.S.,* 496 U.S. 53, 58–59, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) (noting that property of the estate includes property recoverable as a preference). Courts have held, specifically, that property of the estate includes contract rights. *See, e.g., In re Enron Corp.,* 300 B.R. 201, 212 (Bankr.S.D.N.Y. 2003) (concluding that employment agreement between debtor and its head of trading was property of the estate subject to the automatic stay); *Elder–Beerman Stores Corp. v. Thomasville Furniture Indus., Inc. (In re Elder–Beerman Stores Corp.),* 195 B.R. 1019, 1023 (Bankr. S.D.Ohio 1996) ("Courts have consistently held that contract rights are property of the estate.")

■ The Debtor also argues that the termination of the Contract in this case

was insufficient to deprive the Debtor of its property rights under the Contract by virtue of section 541(c)(1) of the Code. That section provides, in relevant part, that

> an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement ... or applicable nonbankruptcy law—
>
> . . .
>
> (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title ... that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1) (amended 2005). The Debtor argues, therefore, that the provision of the Contract upon which AOL relies was not effective to terminate the Debtor's interest in the advertising services due it under the Contract.

■■■ *Ipso facto* clauses (by which a contract is terminated as a result solely of the debtor's insolvency or bankruptcy) are generally disfavored, if not expressly void, under the Bankruptcy Code. *See, e.g., In re James Cable Partners, L.P.,* 154 B.R. 813, 816 (M.D.Ga.1993) (referring to "a basic bankruptcy policy that abhors the operation of so-called 'ipso facto' clauses [that] trigger a default, forfeiture or termination upon the happenstance of bankruptcy."); *In re Hutchins,* 99 B.R. 56, 57 (Bankr.D.Colo.1989) ("Bankruptcy default clauses are not favored and are generally unenforceable under the Bankruptcy Code."). *See also* 11 U.S.C. § 363(*l*) (permitting use, sale or lease of property notwithstanding *ipso facto* clause), § 365(e)(1) (providing that an executory contract or unexpired lease may not be terminated under an *ipso facto* clause), & § 541(c)(1)

(providing that an interest of the debtor in property becomes property of the estate notwithstanding any *ipso facto* clause).

■■■ The Court agrees with the Debtor that by virtue of section 541(c)(1) the Debtor's interest in the Contract became property of the estate notwithstanding AOL's purported termination under section 5.6 of the Contract. Even if AOL's termination was effective, however, that is irrelevant. A transfer may be fraudulent even if it is made in accordance with the terms of a contract between the parties. *See, e.g., In re R.M.L., Inc.,* 92 F.3d 139, 148 (3d Cir.1996) (concluding that nonrefundable fees paid pursuant to commitment letter were nonetheless avoidable as fraudulent conveyances because they did not convey reasonably equivalent value on the debtor); *Pinto v. Phila. Fresh Food Terminal Corp. (In re Pinto),* 89 B.R. 486, 497–98 (Bankr.E.D.Pa.1988), *supplemented by* 98 B.R. 200 (Bankr.E.D.Pa.1989) (concluding that the fact that termination was valid under the contract was irrelevant under section 548).

> Whether the transfer of the Debtor's interest in property was legal or not is irrelevant for the purposes of § 548. Any *otherwise legal* transfer may be avoided under § 548 if the requirements of that section are otherwise met, *e.g.,* if the transfer was for less than reasonably equivalent value and rendered the debtor insolvent. . . .

*Pinto,* 89 B.R. at 497–98 (emphasis in original).

Therefore, the fact that AOL may have had the right to terminate the Contract does not mean that the termination did not effect a transfer of an interest in property of the Debtor for less than reasonably equivalent value.

### c. *Equitable Rights*

█ AOL asserts that the Debtor's argument that it has valuable equitable rights under the Contract contradicts the express terms of the Contract which permitted termination and provided that the Debtor's payments were non-refundable. Further, it argues that, in dismissing the unjust enrichment claim, the Court ruled that the Debtor had no equitable claim. AOL asserts that the doctrine of law of the case precludes the Debtor from arguing otherwise now.

The Court disagrees. The dismissal of the unjust enrichment claim, though an equitable claim, did not determine that the Debtor had no rights (equitable or otherwise) under the Contract.

### d. *Bankruptcy Policy*

█ AOL also asserts that to allow a debtor to freely reinstate contracts that were terminated pre-petition conflicts with the policy of the Code because it would stretch section 548 beyond its permissible bounds. The Court disagrees. Its holding today is not that a debtor can freely reinstate any contract that was terminated pre-petition. Only a contract whose termination resulted in the loss of valuable property rights of the debtor, such as entitlement to services for which it had paid in advance, is potentially recoverable under section 548. *Cf., Metro Water & Coffee Servs., Inc. v. Rochester Cmty. Baseball, Inc. (In re Metro Water & Coffee Servs., Inc.)*, 157 B.R. 742, 746–47 (Bankr. W.D.N.Y.1993) (holding that termination of concession agreement was a transfer for purposes of fraudulent conveyance statute though it was not avoidable because the debtor's material defaults meant it had no legal rights).

There is nothing in the language of section 548 to suggest that contract rights are property that is not recoverable under that section. "The fraudulent conveyance statutes are intended to prevent an insolvent or undercapitalized debtor's estate and its creditors from being wrongfully deprived of assets which could be otherwise utilized for the payment of creditors." *Id.* at 747.

AOL argues that it was not "fraud" for the Debtor to be held to the terms of its bargain and that the Court should not engage in a judicial redistribution of consideration under the Contract that in hindsight turns out to be unfavorable to the Debtor. Contrary to AOL's argument, that is exactly what the fraudulent conveyance statute provides: a judicial determination in hindsight which undoes a bargain that the debtor may have made that did not give it reasonably equivalent value. *See, e.g., R.M.L.*, 92 F.3d at 148 (concluding that even though fees were non-refundable, they may still be recoverable if their payment is found to be a fraudulent conveyance). The issue, therefore, is not whether the Contract provided for the payment of non-refundable fees but whether the Debtor received reasonably equivalent value for the payment of those fees. *Id.*

█ Accordingly, the Court concludes that the rights which the Debtor had in the Contract to online advertisements were property rights which were transferred by the termination of the Contract by AOL. Thus, those rights may be recoverable if the other requirements of section 548 are met.

### 3. *Less than Reasonably Equivalent Value*

█ The Third Circuit in *R.M.L.* acknowledged that the determination of reasonably equivalent value "is exacerbated in cases where ... the debtor exchanges cash for intangibles, such as services or the opportunity to obtain economic value in the future, the value of which is difficult, if not

impossible, to ascertain." *Id.* Nonetheless, the *R.M.L.* Court affirmed the bankruptcy court's determination that non-refundable fees paid by the debtor pursuant to a bank's commitment to lend funds, which was so contingent as to confer little value on the debtor, was avoidable as a fraudulent conveyance. *Id.*

The Debtor asserts that it received less than reasonably equivalent value from the termination of the Contract, because it had prepaid $8.25 million but had received only $2.3 million in services. AOL presents no evidence to establish that it provided anything more of value to the Debtor.

In this case, the Court agrees with the Debtor that to the extent it paid more to AOL than the value of the services provided to it by AOL, the termination of the Contract eliminated that value. At the time the Contract was amended on November 15, 2000, the parties had apparently reconciled the accounts for the first year of the Contract (i.e., through July 2000) and agreed that AOL had provided $2.3 million in services to the Debtor. The Debtor has presented no evidence, however, of the amount of services provided after the first year. Therefore, the Court is unable to determine what value in services AOL provided to the Debtor after the amendment to the Contract. A further hearing will, therefore, be scheduled to consider evidence on this point.

## IV. *CONCLUSION*

For the foregoing reasons, the Court will grant, in part, AOL's Motion for Summary Judgment and dismiss Counts IV and V. The Court will also grant, in part, the Debtor's Motion for Partial Summary Judgment on Count I.

An appropriate Order is attached.