NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 09-1554

———

IN RE: EBC I, INC., f/k/a eTOYS, INC., *et al.*,
Debtors

EBC I INC., f/k/a/ eTOYS, INC.,
Appellant

v.

AMERICA ONLINE, INC.

———

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-08-cv-00100)
District Judge: Hon. Joseph J. Farnan, Jr.

———

Argued February 12, 2010

Before: SLOVITER, ROTH and TASHIMA*, Circuit Judges

(Filed: June 1, 2010)

———

Richard D. Allen     (Argued)
Gregory W. Werkheiser
Thomas W. Briggs, Jr.
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street

———

*Hon. A. Wallace  Tashima, Senior Judge, United States Court of Appeals for the Ninth
Circuit, sitting by designation.

P.O. Box 1347
Suite 1800
Wilmington, DE 19899-1347

     Attorneys for Appellant

Marc J. Phillips
Karen C. Bifferato
Connolly, Bove, Lodge & Hutz
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899-0000

Craig Goldblatt
Danielle M. Spinelli (Argued)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

     Attorneys for Appellee

OPINION

SLOVITER, Circuit Judge.

Appellant EBC I, Inc., f/k/a eToys, Inc. ("eToys"), appeals the District Court's affirmance of the Bankruptcy Court's judgment in favor of Appellee America Online, Inc. ("AOL"). We will affirm.[1]

---

[1] The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157(b)(2) and 1334. The District Court had jurisdiction under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. §§ 158(d)(1) and 1291.

**I.**

eToys was an online retailer that sold toys and children's products. In 1999, eToys entered into an Interactive Marketing Services Agreement (the "Agreement") with AOL, an Internet service provider. The Agreement required AOL to provide advertisements for eToys in the shopping area of AOL's website. Section 5.6 of the Agreement provided that "[AOL] may terminate this Agreement immediately . . . if [eToys] . . . becomes or is declared insolvent," a provision which AOL believed was important to protect its members and brand. App. at 851. In a 2000 amendment, eToys paid $750,000 to AOL (in addition to the $7.5 million that it had previously paid), and in exchange AOL agreed to provide advertisements for the following two years without any further payments by eToys. In effect, eToys pre-paid for two years of advertisements on AOL's website. eToys agreed that the payments were "non-refundable." App. at 848. About three months after the amendment, eToys announced that it was insolvent and would cease operations. As a result, AOL terminated the Agreement pursuant to Section 5.6. eToys thereafter filed for Chapter 11 bankruptcy protection.

On January 3, 2003, eToys filed a complaint against AOL in the Bankruptcy Court seeking, inter alia, to recover the payments it made to AOL as a fraudulent transfer under § 548 of the Bankruptcy Code. eToys filed a motion for partial summary judgment, which the Bankruptcy Court granted in part. *In re EBC I, Inc.*, 356 B.R. 631, 642 (Bankr. D. Del. 2006). The Bankruptcy Court held that AOL's termination of the Agreement was

3

a transfer of an interest of eToys property under § 548, namely, "the advertising services for which [eToys] had pre-paid," and set for trial the question of the value of that transfer. *Id.* at 637. After a trial, the court concluded that eToys was entitled to no recovery on its fraudulent transfer claim because it "failed to meet its burden of proving that it lost anything of value by the termination of the [Agreement]." *In re EBC I, Inc.*, 380 B.R. 348, 366 (Bankr. D. Del. 2008). In the alternative, the court credited the uncontested testimony of AOL's expert that any value eToys could have received from an assignment would have been de minimis. *Id.* at 364. The District Court affirmed.[2] *In re EBC I, Inc.*, 400 B.R. 13, 17 (D. Del. 2009).

## II.

Section 548 provides that a bankruptcy trustee or debtor-in-possession "may avoid any transfer . . . of an interest of the debtor in property" made less than a year before the bankruptcy filing, if the debtor was insolvent on the date of the transfer and did not receive "reasonably equivalent value" for the property transferred. 11 U.S.C. § 548(a)(1)

---

[2] We exercise plenary review over the District Court's appellate review of the Bankruptcy Court's decision and exercise the same standard of review as the District Court in reviewing the Bankruptcy Court's determinations. *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 389 n.3 (3d Cir. 2009). Thus, we review the Bankruptcy Court's findings for clear error; its conclusions of law are subject to plenary review. *In re Handel*, 570 F.3d 140, 141 (3d Cir. 2009).

(2004).[3] Such a transfer "operate[s] as a fraud against the debtor's creditors because the debtor's estate [is] depleted without exchanging property of similar value from which the creditors' claims [can] be satisfied." *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 645 (3d Cir. 1991). Because "the fraudulent conveyance laws are intended to protect the debtor's creditors, . . . the question whether the debtor received reasonable value must be determined from the standpoint of the creditors." *Id.* at 646 (emphasis omitted); *see also In re PWS Holding Corp.*, 303 F.3d 308, 313 (3d Cir. 2002) (noting that "[f]raudulent conveyance law aims to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away") (citation and quotation omitted).

To the extent that AOL's termination of the Agreement was a "transfer" of an interest of eToys property under § 548,[4] eToys and its creditors were no worse off because of it. The Bankruptcy Court found that if AOL had not terminated the Agreement, eToys could not have realized any value for its rights because the Agreement "was not assumable or assignable under section 365(c) of the Bankruptcy Code." *In re*

---

[3]    Section 548 was amended in 2005 to encompass fraudulent transfers made within two years of the bankruptcy filing. That amendment does not apply to cases, like this one, commenced before the effective date of the amendment. *See* Pub. L. No. 109-8, § 1501(a), 119 Stat. 23 (2005).

[4]    The "transfer" to which the Bankruptcy Court referred was, of course, not a transfer in fact but a reversion to AOL of eToys' rights under the contract.

*EBC I*, 380 B.R. at 364. eToys does not appeal the Bankruptcy Court's factual finding that it could not have realized any value for its rights. Instead, eToys presents the legal challenge that the Bankruptcy Court "failed to value the actual property transferred," Appellant's Br. at 21, because it "look[ed] only at the value of the contract to eToys," Appellant's Br. at 15, and thus "fail[ed] to apply the totality of circumstances test" as described in *In re R.M.L., Inc.*, 92 F.3d 139, 154 (3d Cir. 1996), Appellant's Br. at 21.

The Bankruptcy Court did not err in its analysis. eToys could not have realized any commercial value for its rights under the Agreement because it could not have assigned or otherwise sold its rights in the marketplace. Accordingly, eToys did not receive less than "reasonably equivalent value" when those rights reverted to AOL upon termination of the contract. 11 U.S.C. § 548(a)(1)(B)(i). Although AOL might have realized value by terminating the Agreement, it does not necessarily follow that eToys and its creditors lost value. Indeed, it appears that eToys lost nothing of value that could have become a part of its estate. Any recovery under § 548 would result in a windfall to the eToys creditors.

## III.

For the above-stated reasons, we will affirm the judgment of the District Court affirming the judgment of the Bankruptcy Court.